UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

Etan Leibovitz,

        Plaintiff,

        -against-

**CV 15**

RECEIVED
MAR 3 0 2015
PRO SE OFFICE

**1722**

Index No. _____

☐ ORIGINAL

MATSUMOTO, J.

BLOOM, M.J.

: 

THE CITY OF NEW YORK, a municipal entity;
QUEENS COUNTY DISTRICT ATTORNEY RICHARD
BROWN; DEPUTY BUREAU CHIEF FLOYD
HERRING; SUPERVISORY ASSISTANT DISTRICT
ATTORNEY KEVIN FOGARTY; ASSISTANT DISTRICT
ATTORNEY TAYLOR PISCIONERE;
CLERK OF THE COUNTY QUEENS CIVIL COURT
MAUREEN GIDDENS; DEPUTY CLERK JOHN BARRY;
MAJOR LOWE; LIEUTENANT O'BRIEN;
COURT OFFICERS MARIE BENNETT,
JOHN DOE SHIELD #6814, JOHN DOE SHIELD #3814,
JOHN DOE SHIELD #7910, JOHN DOE SHIELD #687,
JOHN DOES #1-16;

        Defendants.

: 

: 

------------------------------------------------------------------X

**COMPLAINT**

Etan Leibovitz
83-19 141st #207
Briarwood, NY 11435
Pro Se

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

NATURE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

NOTICE OF CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.  **The April 16th, 2014 Incident** . . . . . . . . . . . . . . . . . . . . . . . . . .13

    B.  **Arraignment- April 16, 2014, 10:35 p.m.** . . . . . . . . . . . . . . . . . . . . .21

    C.  **April 21, 2014,  AP-1 Calendar** . . . . . . . . . . . . . . . . . . . . . . . . . .26

    D.  **May 15th, 2014, AP-1 Calendar** . . . . . . . . . . . . . . . . . . . . . . . . . 27

    E.  **June 4th. 2014 Mr. Leibovitz's recorded conversation with Defendant PISCIONERE, PEOPLE will dismiss Mr. Leibovitz's case on July 24th, 2015, not enough evidence to move forward** . . . . . . . . . . . . . . . . . . . . . . . . . .28

    F.  **The July 7th, 2014 Incident** . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

    G.  **July 24th, 2014, AP-1 Calendar** . . . . . . . . . . . . . . . . . . . . . . . . . 34

    H.  **September 30th, 2014, AP-1 Calendar** . . . . . . . . . . . . . . . . . . . . . . . .39

    I.  **October 20th, 2014, AP-1 Calendar** . . . . . . . . . . . . . . . . . . . . . . . . 39

    J.  **November 17th, 2014,  AP-1 Calendar** . . . . . . . . . . . . . . . . . . . . . . . .40

    K.  **January 20th, 2015, AP-1 Calendar** . . . . . . . . . . . . . . . . . . . . . . . . 45

    L.  **March 18th, 2015, AP-1 Calendar** . . . . . . . . . . . . . . . . . . . . . . . . .46

FIRST CAUSE OF ACTION
     (42 U.S.C. § 1983/ Fourth Amendment;
     Against Defendants Lowe and Bennett) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 47


SECOND CAUSE OF ACTION
     ( 42 U.S.C. §1983; Failure to Intervene
     Under the Fourth and Fourteenth; Defendants
     O'Brien, John Doe Shield # 6814, #3814,
     #7910, John Does 1-15) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48


THIRD CAUSE OF ACTION
     ( 42 U.S.C. §1983; Freedom of Speech / Seizure of Phone
     Under the First and Fourth; Defendants Lowe and Barry) . . . . . . . . . . . . . . . . . . . . 49


FOURTH CAUSE OF ACTION
     ( 42 U.S.C. §1983; Failure to Intervene
     Under the Fourth and Fourteenth; Defendants
     John Doe Shield #687, #6814 and John Doe #16) . . . . . . . . . . . . . . . . . . . . . . . . . 50


FIFTH CAUSE OF ACTION
     ( 42 U.S.C. §1983; Failure to Intervene
     Under the Fourth and Fourteenth; Defendants
     Giddens and Barry) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51


SIXTH CAUSE OF ACTION
     (42 U.S.C. §1983; Denial of Due Process
     Under the Fifth, Sixth and Fourteenth Amendments;
     Malicious Prosecution, Abuse of Process, and Deprivation of
     Liberty under the Fourth, Fifth, Sixth, and Fourteenth
     Amendments; Defendants Piscionere, Herring,
     Fogarty, Giddens, Barry, Lowe and Bennett) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53


SEVENTH CAUSE OF ACTION
     (False Imprisonment and Arrest under New York State Law;
     Defendants Lowe and Bennett) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

EIGHTH CAUSE OF ACTION
        (Assault and Battery under New York State Law
        Against Defendants Marie Bennett and Major Lowe) . . . . . . . . . . . . . . . . . . . . . . . . . 57


NINETH CAUSE OF ACTION
        (Deprivation of Plaintiff's Rights as
        Guaranteed by the New York State Constitution;
        Defendants Barry and Lowe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58


TENTH CAUSE OF ACTION
        (Assault under New York State Law
        Against Defendants Major Lowe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59


ELEVENTH CAUSE OF ACTION
        (Abuse of Process under State Law;
        Defendants Piscionere, Herring, Fogarty,
        Barry, Lowe, Bennett and Giddens) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60


TWELFTH CAUSE OF ACTION
        (Deprivation of Plaintiff's Rights as Guaranteed
        by the New York State Constitution;
        Defendants Brown Piscionere, Herring,
        Fogarty, Giddens, Barry, Lowe and Bennett) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .61


THIRTEENTH CAUSE OF ACTION
        (Malicious Prosecution under State Law;
        Richard Brown, Floyd Herring, Kevin Fogarty,
        Taylor Piscionere, Maureen Giddens,
        John Barry, Major Lowe,
        Lieutenant O'Brien, Marie Bennett) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .63

FOURTEENTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress
Under State Law; All Defendants) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

FIFTEENTH CAUSE OF ACTION
(Negligent Hiring, Training and Supervision under State Law;
Defendant City of New York) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

SIXTEENTH CAUSE OF ACTION
        RESPONDEAT SUPERIOR under New York State Law
        (Defendant City) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

SEVENTEENTH CAUSE OF ACTION
        (Monell/ 42 U.S.C. § 1983 Claim Against Defendant
        City Of New York For Actions Of The QDAO) . . . . . . . . . . . . . . . . . . .. . . . . . . . .. .67

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

Etan Leibovitz,

              Plaintiff,                    :    **VERIFIED COMPLAINT**

        -against-                   Index No. _____

                                     :    **JURY TRIAL DEMANDED**

THE CITY OF NEW YORK, a municipal entity;
QUEENS COUNTY DISTRICT ATTORNEY RICHARD
BROWN; DEPUTY BUREAU CHIEF FLOYD
HERRING; SUPERVISORY ASSISTANT DISTRICT
ATTORNEY KEVIN FOGARTY; ASSISTANT DISTRICT  :
ATTORNEY TAYLOR PISCIONERE;
CLERK OF THE COUNTY QUEENS CIVIL COURT
MAUREEN GIDDENS; DEPUTY CLERK JOHN BARRY;
MAJOR LOWE; LIEUTENANT O'BRIEN;
COURT OFFICERS MARIE BENNETT,
JOHN DOE SHIELD #6814, JOHN DOE SHIELD #3814,
JOHN DOE SHIELD #7910, JOHN DOE SHIELD #687,  :
JOHN DOES #1-16;

              Defendants.
-------------------------------------------------------------------------- X

     Plaintiff, Etan Leibovitz, hereby brings this action under 42 U.S.C. § 1983 to redress his civil and legal rights, and alleges as follows:

## PRELIMINARY STATEMENT

1. The Supreme Court described prosecutorial immunity in Malley, 475 U.S. at 342:

> "These cases make it clear that the absolute immunity that protects the prosecutor's role as an advocate is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself."

1

2.  Prosecutors at all levels of the criminal justice system enjoy this absolute immunity from lawsuits. It's a sweeping bit of judge-made law that essentially shields them from any civil liability for even egregiously bad behavior, even when said behavior results in a wrongful convictions.

3.  The theory in support of absolute immunity for prosecutors holds that if prosecutors can be subjected to lawsuits for the decisions they make, they may start second-guessing themselves and become reluctant to file charges except in only the most open-and-shut cases. As the Supreme Court put it, the policy is "a balance of evils" and it is "better to leave underdressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation."

4.  The main problem with absolute immunity for prosecutors is the incentives it creates. The problems with shielding a public servant in whom we grant the enormous powers granted to prosecutors should be pretty self-evident. Now consider that nearly every professional incentive (reelection, promotions, election to higher office, high-paying jobs at white-shoe law firms) points prosecutors toward procuring as many convictions as possible, and that courts and bar organizations are notoriously lax at sanctioning misconduct. You get a system that not only fails to sanction bad behavior, but also often rewards it. If the old Lord Acton's axiom is true — that power corrupts, and absolute power corrupts absolutely — enormous power with no accountability can be enormously destructive.

5.  Over the years, the U.S. Supreme Court has carved out a few exceptions to absolute immunity with regards to prosecutors:  In Kalina, v. Fletcher, 522 U.S. 118; 118 S. Ct. 502 (1) a prosecutor's conduct in making allegedly false statements of fact in a certification for determination of probable cause is not protected by the doctrine of absolute prosecutorial immunity, as the prosecutor, in making such a certification, performs a function of a complaining witness rather than an advocate; and (2) thus, Title 42 § 1983 may, under some circumstances, provide a damages remedy against such a prosecutor.  In Burns, the provision of legal advice to the police during their pretrial investigation of the facts was protected only by qualified, rather than absolute, immunity. 500 U.S. at 492-496. In Buckley, the prosecutor

was not acting as an advocate either when he held a press conference, 509 U.S. at 276-278, or when he allegedly fabricated evidence concerning an unsolved crime.

6. Prosecutorial misconduct has become a legal sore in plain sight. Marvin Schechter, a defense lawyer and chairman of the criminal justice section of the New York State Bar Association, wrote a column recently stating that misconduct stood revealed not as a trickle but as a polluted river. He blamed district attorneys who valued conviction rates and tough-guy images over adherence to the rights of the accused. "Assistant district attorneys do not emerge from law school with a genetic disposition" to hide vital material, he wrote. "Instead this is something which is learned and taught." [1]

7. In New York State, if one grants the following aforementioned actors absolute immunity, the counterbalance in order to maintain accountability, prevention of abuse of power and most importantly for justice to prevail in our courtrooms, has to come from the Judicial Department- Departmental Disciplinary Committee in order to police lawyers.

8. In May of 2014, two lawmakers, Sen. John DeFrancisco and Assemblyman Nick Perry were seeking support for their bill to create the first-ever commission to investigate complaints about prosecutors, as it made its way through the Senate.  Their bill (S.6286/A.8634) would create the first statewide Commission on Prosecutorial Conduct in the nation. The commission would be charged with investigating complaints against prosecutors and according to DeFrancisco, R-Syracuse, would possess a power ranging from censure to recommendation of removal. Upon recommendation from the commission to remove a prosecutor from his or her position, the state Court of Appeals would review evidence and make the ultimate decision.

---

[1] http://nylawyer.nylj.com/adgifs/decisions/073012schechter.pdf

"This may seem radical at this stage, but major changes
sometimes do seem radical,"

DeFrancisco said at a press conference
to bring attention to the bill.

9. Both DeFrancisco and Perry, D-Brooklyn, stressed the bill is not an attack on prosecutors in
light of recent investigations into wrong-doers in the Legislature. The legislators likened the
new commission to the Commission on Judicial Conduct created in1975 which, according to
Steve Downs, former chief investigator for the Commission on Judicial Conduct, brought the
investigation process of judges out of the court system so it could be properly conducted.

"I think experience has taught us over the years that professional bodies
trying to discipline themselves is an unworkable system," Downs said.
"For 100 years prior to 1975 only 23 judges were disciplined. In the 39
years since 1975, 826 judges have been disciplined and 166 removed from
office."

## NATURE OF ACTION

10. This is a civil rights action in which the plaintiff, Etan Leibovitz, seeks relief from the
defendants violations of his rights secured by the Civil Rights Acts of 1871, Title 42 U.S.C. §
1983 and 1988, by the United States Constitution, including the Fourth, Fifth, Sixth and
Fourteenth Amendment, and by the laws and Constitution of the State of New York.

11. Plaintiff seeks compensatory and punitive damages, equity relief in the form of injunctive
and declaratory relief, an award of costs, interest and pro se fees, and such other and further
relief as this Court deems just and proper. This lawsuit seeks this Court's strong hand to
finally put an end to the pervasive misconduct of the Queens District Attorney's Office
["QDAO"] and the staff in Queens Civil Court.

12. This lawsuit seeks to hold the defendant CITY OF NEW YORK liable for the above misconduct under the federal civil rights statute, 42 U.S.C. § 1983, and Monell v. Dept. Of Social Services, 436 U.S. 658 (1978).  The unlawful actions of prosecutors documented in this lawsuit resulted from affirmative or de facto municipal policies, practices and customs to violate the constitutional rights of criminal suspects and defendants, or from deliberate indifference by policy-making officials, acting on behalf of the City of New York, to such violations. As Plaintiff will demonstrate, QDAO, as a matter of policy, had the complaining witness, five months after the Plaintiff's initial arrest, commit perjury in the accusatory instrument in order to file a superseding information and then unlawfully concealed exculpatory or impeachment evidence known as "Brady" material, and lied to or misled courts and criminal defendants in order to cover up their unlawful behavior. In this case where such misconduct was exposed, these agencies took no disciplinary action against the offending employees thereby encouraging future constitutional violations to occur, including those directed against Plaintiff.

13. The principal individual defendant, acting pursuant to unlawful municipal policy, who caused Plaintiff's unconstitutional prosecution and orchestrated the subsequent, 8-month cover-up of the District Attorney Brown's Office misconduct is the present Deputy Bureau Chief Floyd Herring.  Despite his position as Deputy Bureau Chief, which puts him in charge as an administrator in Criminal Court supervising assistant district attorneys and supervisors of assistant district attorneys, HERRING engaged in a series of abuse of process in fraudulent and deceptive acts all caused by and consistent with his Office's unlawful policies, in order to prosecute Etan Leibovitz. HERRING'S illegal behavior in Leibovitz' s case included the following:

> Had defendant BENNETT, five months after the Plaintiff's initial arrest, commit perjury in the accusatory instrument in order to file a superseding information.

> HERRING then unlawfully concealed exculpatory or impeachment evidence known as "Brady" material, and lied to or misled courts and criminal defendants in order to cover up their unlawful behavior.

14. BROWN's overall deliberate indifference to the very types of constitutional violations that occur in his office[2], was a substantial cause of the misconduct of HERRING, FOGARTY and PISCIONERE at Plaintiff, and thus exposes defendant CITY OF NEW YORK, for whom Brown was the chief policymaker in the management and administration of the QDAO, a City agency, to federal civil rights liability under Monell for Plaintiff's damages.

15. Supervising attorney KEVIN FOGARTY and assistant district attorney TAYLOR PISCIONERE, acted in concert with HERRING in violating Plaintiff's constitutional rights and are named as defendants in their individual as well as their official capacities.

16. This lawsuit also seeks to hold personally accountable four New York State Court employees, Clerk of the County Queens Civil Court MAUREEN GIDDENS, Deputy Clerk JOHN BARRY, Major LOWE and court officer MARRIE BENNETT who acted in concert with HERRING in violating Plaintiff's constitutional rights and are named as defendants in their individual as well as their official capacities.

17. Finally, Plaintiff seeks additional recovery and to hold personally accountable court officers and a lieutenant who acted in concert with LOWE and BENNETT in violating Plaintiff's constitutional rights and are named as defendants in their individual as well as their official capacities.

18. Plaintiff, Etan Leibovitz, seeks $2.5 million in actual damages, and $18 million in punitive damages, for the misconduct that deprived him of the joys of living as a free person.

---

[2] As Joel Rudin noted in his filing, in 70 known cases of prosecutorial mistakes and misbehavior in Queens over about a decade, the district attorney, Richard A. Brown, has disciplined just one lawyer,  http://www.nytimes.com/2008/10/22/nyregion/22about.html

## PARTIES

19. At all times relevant to this action, Plaintiff Etan Leibovitz was a resident of Queens, County, New York.  He is currently a resident of Queens County, New York.

20. Defendant The City of New York ("CITY") is a municipality organized and existing under the laws of the State of New York.  At all relevant times, the CITY, acting through the Queens County District Attorney's Office was responsible for the policy, practice, supervision, implementation, and conduct of the Queens County District Attorney's Office and was responsible for the appointment, training, supervision, and conduct of all the Queens County District Attorney's Office, including the defendants named in this complaint. In addition, at all relevant times, the CITY was responsible for enforcing the Queens County District Attorney's Office, and for ensuring that the Queens County District Attorney's Office obey the laws of the United States and the State of New York.   Service on Defendant CITY can be effectuated at 100 Church Street, New York, NY 10007, 4th floor.

21. At all relevant times, Defendant Richard Brown ("BROWN"), was the District Attorney for the Queens County District Attorney's Office.  At all relevant times, Defendant BROWN acted in his capacity as agent, servant, and employee of Defendant CITY, within the scope of his employment as such, and under color of state law except when alleged herein that he acted beyond his scope. He is sued in his individual and official capacity.  Service on Defendant BROWN can be effectuated at his main office located on 125-01 Queens Boulevard Kew Gardens, New York 11415.

22. At all relevant times, Defendant Floyd D. Herring ("HERRING"), was the Deputy Bureau Chief, administrator in Criminal Court, supervising assistant district attorneys and supervisors of assistant district attorneys.  At all relevant times, Defendant HERRING acted in his capacity as agent, servant, and employee of Defendant CITY, within the scope of his employment as such, and under color of state law except when alleged herein that he acted beyond his scope. He is sued in his individual and official capacity.  Service on Defendant

7

HERRING can be effectuated at his main office located on 125-01 Queens Boulevard Kew Gardens, New York 11415.

23. At all relevant times, Defendant Kevin Fogarty ("FOGARTY"), was the supervising assistant district attorney for the Queens County District Attorney's Office.  At all relevant times, Defendant FOGARTY acted in his capacity as agent, servant, and employee of Defendant CITY, within the scope of his employment as such, and under color of state law except when alleged herein that he acted beyond his scope. He is sued in his individual and official capacity. Service on Defendant FOGARTY can be effectuated at his office located on 125-01 Queens Boulevard Kew Gardens, New York 11415.

24. At all relevant times, Defendant Taylor Piscionere ("PISCIONERE"), was an assistant district attorney for the Queens County District Attorney's Office.  At all relevant times, Defendant PISCIONERE acted in her capacity as agent, servant, and employee of Defendant CITY, within the scope of her employment as such, and under color of state law except when alleged herein that she acted beyond her scope. She is sued in her individual and official capacity. Service on Defendant PISCIONERE can be effectuated at her office located on 125-01 Queens Boulevard Kew Gardens, New York 11415.

25. At all relevant times, Defendant Maureen Giddens ("GIDDENS") was the clerk of the county,  Queens Civil Court,  acting in the capacity as agent, servant, and employee of New York State and within the scope of her employment as such, and under color of state law except when alleged herein that she acted beyond her scope. She is sued in her individual and official capacity.  Service on Defendant GIDDENS can be effectuated at her office located on 89-17 Sutphin Blvd. Jamaica, NY 11435.

26. At all relevant times, Defendant John Barry  ("BARRY") was the deputy clerk of the county, Queens Civil Court , acting in the capacity as agent, servant, and employee of New York State and within the scope of his employment as such, and under color of state law except

when alleged herein that he acted beyond his scope. He is sued in his individual and official capacity.  Service on Defendant BARRY can be effectuated at his office located on 89-17 Sutphin Blvd. Jamaica, NY 11435.

27. At all relevant times, Defendant Lowe ("LOWE") was a major in Queens Civil Court, acting in the capacity as agent, servant, and employee of New York State and within the scope of his employment as such, and under color of state law except when alleged herein that he acted beyond his scope. He is sued in his individual and official capacity.  Service on Defendant LOWE can be effectuated at his office located on 89-17 Sutphin Blvd. Jamaica, NY 11435.

28. At all relevant times, Defendant O'Brien ("O'BRIEN") was a lieutenant in Queens Civil Court, acting in the capacity as agent, servant, and employee of New York State and within the scope of his employment as such, and under color of state law except when alleged herein that he acted beyond his scope. He is sued in his individual and official capacity.  Service on Defendant O'BRIEN can be effectuated at his office located on 89-17 Sutphin Blvd. Jamaica, NY 11435.

29. At all relevant times, Defendant Marie Bennett ("BENNETT") was a court officer in Queens Civil Court, acting in the capacity as agent, servant, and employee of New York State and within the scope of her employment as such, and under color of state law except when alleged herein that she acted beyond her scope. She is sued in her individual and official capacity.  Service on Defendant BENNETT can be effectuated at her office located on 89-17 Sutphin Blvd. Jamaica, NY 11435.

30. At all relevant times, Defendant "John Doe" Shield #6814  ( "John Doe Shield #6814" ) was a court officer in Queens Civil Court acting in the capacity as agent, servant, and employee of New York State and within the scope of his employment as such, and under color of state law except when alleged herein that he acted beyond his scope. He is sued in his individual and official capacity.  Plaintiff is unable to determine the complete name of the court officer at this time and thus is suing him under a fictitious designation.

9

31. At all relevant times, Defendant "John Doe" Shield #3814 ( "John Doe Shield #3814" ) was a court officer in Queens Civil Court acting in the capacity as agent, servant, and employee of New York State and within the scope of his employment as such, and under color of state law except when alleged herein that he acted beyond his scope. He is sued in his individual and official capacity. Plaintiff is unable to determine the complete name of the court officer at this time and thus is suing him under a fictitious designation.

32. At all relevant times, Defendant "John Doe" Shield #7910 ( "John Doe Shield #7910" ) was a court officer in Queens Civil Court acting in the capacity as agent, servant, and employee of New York State and within the scope of his employment as such, and under color of state law except when alleged herein that he acted beyond his scope. He is sued in his individual and official capacity. Plaintiff is unable to determine the complete name of the court officer at this time and thus is suing him under a fictitious designation.

33. At all relevant times, Defendant "John Doe" Shield #687 ( "John Doe Shield #687" ) was a court officer in Queens Civil Court acting in the capacity as agent, servant, and employee of New York State and within the scope of his employment as such, and under color of state law except when alleged herein that he acted beyond his scope. He is sued in his individual and official capacity. Plaintiff is unable to determine the complete name of the court officer at this time and thus is suing him under a fictitious designation.

34. At all relevant times, Defendant "John Doe #1-16" ("John Doe #1-16") were court officers in Queens Civil Court acting in the capacity as agent, servant, and employee of New York State and within the scope of their employment as such, and under color of state law except when alleged herein that they acted beyond their scope. They are sued in their individual and official capacity. Plaintiff is unable to determine the complete name of the court officers at this time and thus is suing them under a fictitious designation.

35. The QDAO is an agency of the CITY OF NEW YORK. The District Attorney, deputy bureau chief and attorneys employed by the D.A.'s Office are agents and employees of the City of

New York, which is legally responsible for torts they commit within the scope of their employment and/or under color of law.

36. Plaintiff reserves the right to amend this Complaint after discovery reveals the true names of JOHN DOE SHIELD #6814, JOHN DOE SHIELD #3814, JOHN DOE SHIELD #7910, JOHN DOE SHIELD #687 and JOHN DOES #1-16.

37. All actions by Defendants, their officers, employees, or agents, described herein are taken under color of state law.

38. All defendants and each of them, separately and in concert, engaged in acts and/or omissions that constituted deprivations of plaintiff's constitutional rights. Though these acts were carried out under color of law, they had no justification or excuse, and were instead gratuitous, illegal, improper, and unrelated to any activity in which district attorneys may appropriately and legally engage in the course of prosecuting defendants in the State and People's behalf.

## JURISDICTION AND VENUE

39. This action is brought pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. §1983, §1988 and under the common law of the State of New York.

40. Jurisdiction is conferred on this Court under 28 U.S.C. §§ 1331 and 1343(a), and under 28 U.S.C. § 1367, which provides for supplemental jurisdiction over claims which arise under New York state law.

41. In addition, this Court has original jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) to redress the deprivation, under color of state law, of any right, privilege, or immunity secured by the Constitution of the United States.

42. Venue is proper under 18 U.S.C. § 1391(b) and (c) in that Defendant CITY OF NEW YORK is administratively located within the Eastern District of New York, and the events giving rise to this claim occurred within the boundaries of the Eastern District of New York.

43. Declaratory relief is available pursuant to 28 U.S.C. §§2201 and 2202.

## JURY TRIAL DEMANDED

44. Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## NOTICE OF CLAIM

45. Plaintiff timely filed a Notice of Claim with the Comptroller of the City of New York, setting forth the facts underlying Plaintiff's claim against Queens County District Attorney Richard Brown, Deputy Bureau Chief Floyd Herring, Supervising Assistant District Attorney Kevin Fogarty and Assistant District Attorney Taylor Piscionere.

46. The CITY assigned a claim number to Plaintiff's claim, and Plaintiff was not subjected to an examination pursuant to N.Y Gen. Mun. L. Sec. 50-h.

47. Pursuant to New York General Municipal Law § 50-e et seq., at least 30 days have elapsed since the service of notices of claim, and to date, no answer has been received by Plaintiff and no compensation has been offered by Defendant CITY in response to this claim.

48. This action has been commenced within one year and ninety days of the date of occurrence of the events giving rise to this Complaint.

## STATEMENT OF FACTS

49. On April 16th, 2014, at approximately 10:35 am, Defendant BENNETT arrested Plaintiff Etan Leibovitz. The Queens County District Attorney's Office filed a complaint, number 2014QN021751 , charging Mr. Leibovitz with one count of:   Obstructing Governmental Administration in the second degree.   At approximately 10:35 pm on April 16, 2014, Mr. Leibovitz was arraigned in Queens Criminal Court on Queens County misdemeanor complaint No. 2014QN021751.  He pleaded not guilty and bail was set for $1000.00.  Mr. Leibovitz remained incarcerated until the following evening.

## BACKGROUND

### The April 16th, 2014 Incident

50. On April 16th, 2014, Mr. Leibovitz's friend and co-defendant Kenneth J. Ward  Jr (hereinafter Mr. Ward) had a court hearing scheduled for 9:30 am, in Queens Civil Court (docket # 059224/14) with regards to his  Notice of Petition for nonpayment against his wife Teresa R. Rodriguez/ AKA Teresa R. Ward.

51. At approximately 10:00 am, Mr. Leibovitz entered the courtroom, room 406 Part D, to observe Mr. Ward's hearing. On April 3rd, 2014 at approximately 5:57 pm, Mr. Leibovitz served Teresa R. Rodriquez/AKA Teresa R. Ward the Notice of Petition.

52. Upon Mr. Leibovitz's arrival, Mr. Leibovitz asked Mr. Ward how the hearing went and was quickly informed that Teresa R. Rodriquez/ AKA Teresa R. Ward was manipulating the courts once again but this time in a different jurisdiction.

13

53. For a few minutes, Mr. Leibovitz patiently sat with Mr. Ward in the back of the courtroom to observe. A few minutes later, Mr. Ward then asked Defendant BENNETT if he could leave the courtroom since Mr. Leibovitz was with him. Defendant BENNETT stated," No, She (Teresa R. Rodriquez/AKA Teresa R. Ward) is a woman and you are a man."

54. Mr. Ward then asked Defendant BENNETT," Why?" and then explained to Defendant BENNETT that his intentions were to follow Judge Landson's order and go down to the third floor to order the minutes. Defendant BENNETT once again repeated that it was because Teresa Ward was a woman and that Mr. Ward had to stay until Defendant BENNETT said so.

55. Mr. Leibovitz then responded, "What does it have to do with gender, the courts shouldn't be biased. This lady has repeatedly manipulated the courts and is remarkable at having people perceive her as the victim".

56. At approximately 10:05 am, Mr. Ward and Mr. Leibovitz were finally allowed to exit the courtroom. Minutes after getting confirmation that both Mr. Ward and Mr. Leibovitz can leave, Mr. Leibovitz opened the courtroom door and stated to Defendant BENNETT "I observed your bias actions in court today towards men so let me open the door for you and allow you to go first, chivalry still exists, Ladies first". Defendant BENNETT then stated , "No you go right ahead". Mr. Leibovitz then insisted Defendant BENNETT go first. Defendant BENNETT then said, "Please go ahead now".

57. Both Mr. Ward and Mr. Leibovitz exited the courtroom and started walking in the direction towards the vestibule, a public area by the elevators with the intention to go down to the third floor to get Mr. Ward's minutes from the hearing that was just conducted and then eventually to go home.

58. At approximately 10:10 am, Defendant BENNETT was following both Mr. Ward and Mr. Leibovitz. As a result, Mr. Leibovitz felt anxious and unease so he alerted Defendant BENNETT he was going to record her to protect Mr. Ward and himself.

59. While still in the hallways, heading in the direction towards the elevators on the 4th floor, Defendant BENNETT then called for backup, using her walkie talkie.

60. Defendant BENNETT's bias against Mr. Ward earlier in the courtroom and in retaliation against Mr. Leibovitz's exercise of his constitutionally protected speech by recording her, the proceeding was  instituted  to interfere with, and chill, the exercise of free speech and association, and intentionally, maliciously with a deliberate indifference.

61. When Mr. Ward, Defendant BENNETT and Mr. Leibovitz arrived by the elevators, Defendant O'BRIEN, John Doe Shield #6814, John Doe Shield #3814, John Doe Shield #7910 and John Does #1-15 were present at the location.

62. Mr. Ward and Mr. Leibovitz were both standing peacefully by the elevators with Mr. Leibovitz's smartphone situated in his right hand visible to everyone.

63. Defendant BENNETT didn't want Mr. Ward and Mr. Leibovitz to be around the general public so she said "I want you to go downstairs to the 3rd floor."

64. Defendant O'BRIEN then told Mr. Leibovitz to go downstairs to the third floor as well to speak to the officers.

65. Mr. Leibovitz reacted to their request by stating, "Why would I go downstairs to a secluded area when we can speak here in a public area where there are witnesses to observe our actions and reactions".

66. At approximately 10:14 am, Defendant BENNETT stated, "You can't record in court."

67. Since Mr. Leibovitz has seen many YouTube videos of court proceedings, as well as videos where interviews are being conducted in the hallways inside court buildings such as People's Court as well as random videos posts of court hearings, Mr. Leibovitz was a little puzzled and confused with Defendant BENNETT's statement that he couldn't record in court.

68. At approximately 10:15 a.m., Mr. Leibovitz stated to Defendant BENNETT, "What law, statute, rule states that I can't record?"

69. Worried what the court officers were up to, Mr. Leibovitz's voice of consternation sought the general public to come over and be witnesses to what was transpiring. Mr. Leibovitz once again reiterated his intent stating," I am now stating my mens rea and my intent. My intent is to video record these officers who are biased against my friend Kenny Ward. My intent is not to act disorderly, just to protect my friend Kenny's civil rights and due process when the following Court Officer (as Mr. Leibovitz pointed towards Defendant BENNETT) was biased against him in court a few minutes ago and my right to expose this corruption".

70. As soon as Mr. Leibovitz was done focusing his attention on getting the general public to be witnesses to what was taking place,  Mr.  Leibovitz then once again asked Defendants John Does #1-15, John Doe Shield #6814, John Doe Shield #7910, John Doe Shield #3814, Defendant BENNETT and Defendant O'BRIEN, "What law, rule, statute states one can't record in the hallways of the court which is a public area?"

71. Finally after several minutes, on information and belief, Defendant John Doe Shield #6814 answered, "It's an administrative rule".

72. Not completely satisfied with the court officer's response, since this rule obviously violates Mr. Leibovitz's First Amendment rights, Mr. Leibovitz then replied, "I have a smart phone, I am going to look this up."

73. According to the NYS Court Officer Trainee Manual some of the functions of a court officer is to provide courthouse and courtroom security. Court Officers provide a safe and secure environment for the fair and prompt resolution of all matters before the courts.  The job is a blend of security work, public relations, law enforcement, prisoner management, and clerical duties.  A strong sense of responsibility is necessary, as well as good judgment, patience and impartiality.  Court Officers must not favor one party over another in a court proceeding. They protect and enhance the judicial process itself.  A Court Officer is usually the first person a visitor to court will approach for information. The officer's tone and demeanor can

help out people at ease and establish confidence in the judicial process.  In their actions, Court Officers must reflect impartiality, fairness and commitment to justice.

74. Instead of exercising good judgment, patience and mitigating the situation by allowing Mr. Leibovitz to look up the aforesaid "administrative rule" by using his smartphone to ease his concerns and establish confidence, Defendant BENNETT instead stated " I want you to go downstairs to the 3rd floor."

75. Mr. Leibovitz then responded, "My friend Kenny and I, we stick together we don't separate."

76. After a few minutes, Mr. Leibovitz was then confident that there were enough bystanders and on lookers who observed what transpired that he then obliged to go downstairs. Defendants O'BRIEN, BENNETT, John Does #1-6, John Doe Shield #6814, John Doe Shield #7910, John Doe Shield #3814 and both Mr.Ward  and Mr. Leibovitz proceeded to enter the elevator.  Mr. Ward voluntarily went to the third floor as well, after being told to leave the building. Mr. Ward was concerned what the aforementioned defendants were up, so he followed the defendants and Mr. Leibovitz just in case Mr. Leibovitz needed him to be his personal eye witness should something happen.

77. Upon arrival to the third floor Defendant BENNETT led the way, leading Defendants O'BRIEN, John Does #1-6, John Doe Shield #6814, John Doe Shield #7910, John Doe Shield #3814 and both Mr. Ward and Mr. Leibovitz to room 367, by the benches.

78. Upon arrival to room 367, Defendant BENNETT told Mr. Leibovitz to sit down on the bench so he complied.

79. Defendant O'BRIEN kept giving Mr. Leibovitz  a hard time about recording what was happening for which Mr. Leibovitz said, "What do you have to worry about ? Why are you so nervous? Mr. Ward and I need to protect ourselves form corrupt people."

80. Defendant John Doe #1 then attempted to once again apply a tactic of divide and conquer, a strategy to gain and maintain power, by telling Mr. Ward to leave for which Mr. Ward and

Mr. Leibovitz once again both stated we stick together. Mr. Ward then sat down peacefully on the bench, to Mr. Leibovitz's right.

81. Defendants John Does #1-4 then went into room 367.

82. Defendants BENNETT, John Doe Shield #3814, O'BRIEN, John Doe Shield #7910 and John Doe #5-6 remained outside to supervise both Mr. Ward and Mr. Leibovitz.

83. A few minutes later, Defendant LOWE came out from the office, room 367, and pointed to Mr. Ward and stated to Defendant O'BRIEN, "Give him an order and then arrest him!!!".

84. Mr. Ward was then given an unlawful order by Defendant O'BRIEN stating to Mr. Ward, "You can go now if you get up and leave."

85. Mr. Ward then glanced at Mr. Leibovitz's direction and stated, "Etan, what do you want me to do?."

86. Mr. Leibovitz asked Defendant O'BRIEN, "Why does he have to leave?"

87. No one could provide an answer to Mr. Leibovitz's legitimate question. After a few seconds passed, Mr. Leibovitz then further stated, "I will erase my video from my phone".

88. After witnessing Defendant LOWE tell a court officer to give an unlawful order to Mr. Ward and then arrest him, Mr. Leibovitz knew what he was up against.  Mr. Leibovitz  stood up and was about to start recording again when  Defendant LOWE  grabbed his phone from behind and took the phone out from his right hand. Before Mr. Leibovitz could react, Defendant LOWE was in the process of heading back inside to room 367.

89. Defendant John Doe Shield # 7910 then effectuated the arrest of Mr. Ward and escorted him downstairs.

18

90. Mr. Leibovitz was then left alone sitting peacefully on the bench with Defendants John Does #2 - #4, John Doe Shield #3814 and Defendant BENNETT outside in the hallways by Room 367 supervising him. Every few minutes Mr. Leibovitz warned the court officers that he would see them in Federal Court if he were arrested and that they messed with the wrong two people today because Mr. Ward and Mr. Leibovitz will spend all night in the law library to prosecute this false arrest.

91. At approximately 10:35 a.m., Defendant BENNETT went back into room 367 and on information and belief was advised by Defendant LOWE to arrest Mr. Leibovitz. Defendant BENNETT then came back out a few minutes later from room 367 and initiated the process of a warrantless arrest, without probable cause, by telling Mr. Leibovitz to put his hands behind his back. She then completed the false arrest by placing handcuffs on both his wrists. Mr. Leibovitz asked her on what grounds is she arresting him.

92. Mr. Leibovitz was then escorted downstairs to the first floor where he was placed and confined in the Queens Civil Courts holding cell, a 4 foot by 4 foot cubicle, with Mr. Ward , who was currently already confined there. His right handcuff was then unlocked and then cuffed again but this time to the metal horizontal bar against the wall.

93. After being confined for approximately 2 hours in the Court's holding cell without consent, Mr. Leibovitz was instructed to step out and stand just a few feet outside the holding cell, in the Court's First Floor Main Office. Defendant BENNETT then proceeded to read Mr. Leibovitz his Miranda Rights.

94. Mr. Leibovitz was then escorted out of the courthouse, handcuffed with several New York State Court Officers by his side. Mr. Leibovitz felt so embarrassed as the humiliation and anger slowly began to mount when the general public witnessed him being escorted out of the courthouse.

95. At approximately 12:40 pm Mr. Leibovitz was placed in a New York State Courts vehicle and was transported to the 103rd Precinct. At approximately 12:55pm, upon his arrival to the

103rd   Precinct, Mr. Leibovitz was placed and confined in a 4 foot by 6 foot holding cell that included two other arrestees.

96. At approximately 1:10 p.m., Mr. Ward arrived at the 103rd Precinct and was placed and confined in an adjacent 4 foot by 6 foot holding cell.

97. A little after a half hour, both Mr. Ward and Mr. Leibovitz were fingerprinted and photographed. Both Mr. Ward and Mr. Leibovitz asked the police officers multiple times if they could place a phone call but their responses were that the court officers were responsible for them.

98. On information and belief, Mr. Leibovitz was informed by the police officers that the court officers were hanging outside by the waiting area.

99. Defendants John Doe Shield #6814 and John Doe Shield #7910 came in several times during Mr. Ward and Mr. Leibovitz's confinement at the 103rd Precinct and informed both of them that eventually Mr. Ward and Mr. Leibovitz will be able to place their phone calls.

100. During Mr. Leibovitz's stay at the 103rd Precinct, neither Mr. Ward nor Mr. Leibovitz placed a call to inform any family member or friend where they were located and what just transpired.

101. A little after 4:00 p.m., Mr. Leibovitz was once again placed in a New York State Court vehicle and was transported to Queens Central Booking where he arrived at 4:25 p.m. At 4:45 Mr. Ward arrived at Queens Central Booking.

102. Early that evening Mr. Leibovitz was transferred from NYPD's custody to the Department of Correction's custody and was placed in a holding cell with several other arrestees. Mr. Leibovitz was still unable to place a call to notify a friend or family member. Luckily his friend, Mr. Ward was able to get a hold of Ms. Linda Martin and informed her of their arrest.

103. Late that evening, Madeline Porta Esq. from Legal Aid was assigned to represent Mr. Leibovitz. Prior to seeing Judge Hawkins, Mr. Leibovitz spoke with Ms. Porta and discussed

his "rap sheet". Mr. Leibovitz's rap sheet post-2013 was not a true reflection. Mr. Leibovitz informed Ms. Porta what he has gone through in the past year and if she was going to speak on his behalf, he wanted her to state exactly what he stated to her, in court, in front of the Judge. Mr. Leibovitz also informed Ms. Porta that if she was reluctant then he would proceed pro se because he was knowledgeable in New York State Criminal procedural and substantive law.  With the little time Ms. Porta and Mr. Leibovitz had left, Mr. Leibovitz informed Ms. Porta about the morning false arrest and that he hasn't placed a phone call to notify family and friends about his arrest. Ms. Porta took the initiative and stated that she could call someone for him on his behalf. Mr. Leibovitz relied on Ms. Porta to help him seek his freedom. Mr. Leibovitz provided Ms. Porta with two phone numbers and she assured him she would call. Ms. Porta failed to call anyone for him that night.

## Arraignment- April 16, 2014, 10:35 p.m.

104.    At approximately 10:35 p.m., Mr. Ward and Mr. Leibovitz, with their respective attorneys' by their side, were in front of Judge Hawkins. Both lawyers argued that their client's case needed to be dismissed due to the complaint being insufficient on its face. If their cases weren't dismissed then their lawyers argued that both Mr. Ward and Mr. Leibovitz should be released on their own recognizance. Mr. Leibovitz's lawyer explained to Judge Hawkins what his rap sheet failed to reflect,  a person who helps others, an activist who admins several Facebook help groups and that prior to 2013, Mr. Leibovitz  never had any legal problems.

105.    That night, Judge Hawkins' temperament reminded Mr. Leibovitz once again how the NY State Commission on Judicial Conduct has failed the people of New York. Mr. Ward requested politely to speak on his behalf and without any reason or justification was denied by Judge Hawkins. Upon his denial, Mr. Ward was adamant about being heard due to his frustration with the courts with his other pending cases and today's arrest. As a result Judge Hawkins berated Mr. Ward and then had the court officers escort him out of the courtroom. Mr. Leibovitz bit his tongue that night and decided to fight his battle once he was free to file

Motions.    That night Judge Hawkins set bail at $1000 for both Mr. Ward and Mr. Leibovitz, with their next return date set for April 21, 2014.  At the conclusion of the arraignment, Judge Hawkins yelled and ordered for both, Mr. Ward and Mr. Leibovitz, to get lawyers since their financial questionnaire that was filled out that night showed they didn't qualify for 18B lawyers.

106.    At approximately 11pm that night, several arrestees, Mr. Ward and Mr. Leibovitz were escorted upstairs by correction officers to fill out a questionnaire with regards to mental health and other required paperwork.

107.    Correction Officers Shield #15056, Shield #5496 and Cathy Doe #1 facilitated in the paperwork process by writing the arrestee's responses to the questionnaire.

108.    Mr. Ward participated in the questionnaire after the first arrestee completed his. During the middle of Mr. Ward's questionnaire, both Mr. Ward and Mr. Leibovitz asked the aforementioned correction officers if it was possible that upon completion of their questionnaire if they could place a phone call. Correction Officers Shield #15056, Shield #5496 and Cathy Doe #1 agreed that it wouldn't be a problem.

109.    Upon Mr. Ward's completion of the questionnaire, Correction Officers Shield #15056, Shield #5496 and Cathy Doe #1 informed Mr. Ward that he needed to sign the paperwork. Mr. Ward didn't have a problem with signing the paperwork but he first wanted to review what Correction Officers Shield #15056, Shield #5496 and Cathy Doe #1 transcribed.

110.    Correction Officers Shield #15056, Shield #5496 and Cathy Doe #1 didn't take a liking to this so they admonished Mr. Ward by stating, "Sign it now or else you will not be making your call."

111.    Mr. Ward refused to sign and thus was denied the right to place a call. The same thing happened to Mr. Leibovitz. Both Mr. Ward and Mr. Leibovitz were then placed in a holding cell, 20 feet by 20 feet.

112.    For the next 30 minutes, more arrestees were placed in the holding cell as Mr. Ward and
        Mr. Leibovitz patiently waited to be transferred to Rikers Island C-95,

113.    On or about April 17, 2014, at midnight, approximately 16 arrestees, Mr. Ward, and Mr.
        Leibovitz were transferred over to Rikers Island, C-95.

114.    Upon Mr. Ward's and Mr. Leibovitz's arrival at C-95, Mr. Ward and Mr. Leibovitz went
        through the standard arrestee process of "going through the system" which lasted over 16
        hours, starting at 12:45 am and was finally completed for Mr. Leibovitz at approximately
        4:30 pm.

115.    "Going through the system" entails:

        A. Scanner station
        B. Personal Property station: Arrestees relinquish their sneakers, certain shirts if
        they symbolize gang related colors, wallet and other personal property which is
        vouchered.
        C. Interview station: For any gang affiliation, suicidal thoughts and other conditions.
        D. Medical checkup station: blood test, screening, medical health questionnaire,
        medical health, AIDS test, TB shots.

116.    In order to try to kill time, both Mr. Ward and Mr. Leibovitz, attempted to fall asleep.
        Sleeping meant on the dirty floors, with cereal boxes, milk cartons, spilled milk and peanut
        butter sandwiches from the prior meals all scattered around randomly on the floor. Each
        minute during this process is equivalent to 30 minutes out in the real world. Both Mr. Ward
        and Mr. Leibovitz were miserable during this whole process and at different times during the
        course of the procedure would exude mental anguish, cursing out the court officers and the
        judicial system. Both Mr. Ward and Mr. Leibovitz tried to keep their spirits up by reminding
        each other that they would seek justice once they were released by representing themselves
        and filing their own legal paperwork.

117.    On information and belief, at approximately 4:45 pm, C-95 received a fax stating Mr.
        Leibovitz's bail was posted. Mr. Leibovitz was then removed from the last station, the

general holding cell which included all the arrestees, and was placed in the "Bail Release" holding cell waiting for a bus driver to transport him to the release station. Early that evening at approximately 7:55 p.m. a bus driver took Mr. Leibovitz and several other arrestees.

118. At approximately 9:05 p.m., Mr. Leibovitz was finally released from the custody of the Department of Corrections. At the release station, Mr. Leibovitz's friend Linda Martin, who posted bail on his behalf, was still in the waiting area after arriving at approximately 1pm that afternoon. Ms. Martin kindly dropped Mr. Leibovitz off by the Queens Central Booking.

119. Upon Mr. Leibovitz's release, he discovered that the Queens Civil Court was in possession of his personal property, which included his wallet, jacket, legal paper work and house keys. Luckily, Mr. Leibovitz's sister and her boyfriend just got back from their vacation and were inside the apartment to pick up their dog. Mr. Leibovitz entered the apartment at approximately 10 o'clock that night.

120. On April 18, 2014, after a surprisingly good night sleep, Mr. Leibovitz woke up a determined man. Mr. Leibovitz was ready to seek justice and was adamant on filing a motion to dismiss for that following Monday, the next return court date. Mr. Leibovitz first needed to pick up his personal property from Queens Civil Court and then the criminal complaint from his lawyer.

121. At approximately 9:50 that morning, Mr. Leibovitz was at Queens Civil Court picking up his personal property. Mr. Leibovitz's property was returned with the exception of his cell phone, which was unlawfully held as evidence.

122. At 12:30 that afternoon, Mr. Leibovitz made a quick stop at Supreme Court Law Library to get some legal information with regards to Obstructing Governmental Administration in the second degree.

123. At approximately 1:10 pm, Mr. Leibovitz stopped by Queens Civil Court, hoping to be able to identify the defendants and their shield numbers who were involved with his arrest

and to verify the room number where Mr. Ward and Mr. Leibovitz sat peacefully until they were arrested.

124.   Later that afternoon, at approximately 2:28 pm, Mr. Leibovitz reached out to his lawyer, Ms. Porta, inquiring when was a good time for him to stop by her office to pick up the criminal complaint. At approximately 3:42 p.m. Mr. Leibovitz met up with Ms. Porta.

125.   In Mr. Leibovitz's criminal complaint, Defendant BENNETT of Queens Civil Court, Tax Reg#: 517100, being duly sworn, deposes and says that:

The above offense was committed as follows:

On or about April 16th, 2014 between 10:05AM and 10:25AM, inside of 89-17 SUTPHIN BOULEVARD (QUEENS CIVIL COURT), COUNTY OF QUEENS, STATE OF NEW YORK, the defendants committed the offense of:  PL 195.05 OBSTRUCTING GOVERNMENTAL ADMINISTRATION IN THE SECOND DEGREE.

Deponent states that at the above mentioned date, time , and place of occurrence the defendants, Etan M. Leibovitz and Kenneth J Ward Jr. were inside of the above mentioned location, which is the Queens Civil Court House.

Deponent further states that the defendant, Etan M. Leibovitz, took out his phone and proceeded to record on his phone in the vestibule area of the court room.

Deponent further states that when she approached the defendant, Etan M. Leibovitz, and instructed him to stop recording with his phone, the defendant refused to comply with the deponent's lawful order and continued to record.

Deponent further states that when the defendant, Etan M. Leibovitz, was approached by Lieutenant O'Brien, the defendant, Kenneth J. Ward Jr. stepped in between Lieutenant O'Brien and the defendant, Etan M. Leibovitz, and obstructed the above mentioned investigation.

Deponent further states that the defendants were yelling and screaming in the hallways of the above mentioned location causing a crowd to gather.

126.   That weekend, Mr. Ward and Mr. Leibovitz met to discuss filing their pretrial motions.

## April 21, 2014,  AP-1 Calendar

127.   On April 21, 2014, Mr. Leibovitz and Mr. Ward's case was called on the AP-1 calendar in front of the Honorable Serita. Prosecuting on behalf of the PEOPLE were defendants FOGARTY and on information and belief, PISCIONERE.  The following transpired:

> A. The Honorable Serita, granted both Mr. Leibovitz and Mr. Ward's request to have their lawyers removed so that they can proceed pro se.
> B. Mr. Leibovitz and Mr. Ward's case was adjourned for May 15, 2014.

128.   At approximately 12:00 pm, Kevin Begley, chief clerk from QIDV, informed both Mr. Leibovitz and Mr. Ward that as a result of their arrest, that weekend, 4 foot signs stating:

> "No cameras or audio/video recording devices may be used in this courthouse unless expressly authorized by the Supervising Judge"

were put up in Criminal Court as well as other courts in Queens.

**Please See Exhibit A on the enclosed disc**

129.   Later that afternoon, Mr. Leibovitz filed his first Motion to Dismiss pursuant to CPL 170.30 and CPL 170.40 in the Interest of Justice.

130.   A week later, in the early afternoon on April 29, 2014, Mr. Leibovitz stopped by Queens Civil Court to verify the status of his pending case.  Upon going through the security scanning process to enter the courts, Mr. Leibovitz's "replacement cell phone", was confiscated by a court officer, vouchered and then returned to Mr. Leibovitz upon his departure.

131.    The following week, in the late morning on May 6th, 2014, Mr. Leibovitz stopped by
Queens Civil Court once again to verify the status of his pending case.  Upon going through
the security scanning process to enter the courts, Mr. Leibovitz's "replacement cell phone"
was once again confiscated by a court officer, shield # 1955, vouchered, and then returned to
Mr. Leibovitz upon his departure.

**May 15th, 2014, AP-1 Calendar**

132.    On May 15th, 2014, Mr. Leibovitz and Mr. Ward's case was called on the AP-1 calendar
in front of the Honorable Golia.  Prosecuting on behalf of the PEOPLE were defendants
FOGARTY and PISCIONERE. The following transpired:

> A. Judge Golia granted both Mr. Leibovitz and Mr. Ward their pro se application.
> B. 18B lawyer Stephen A Gargiulo was assigned to be both Mr. Leibovitz and Mr.
> Ward's legal advisors
> C. Judge Golia informed the PEOPLE,  Mr. Ward and Mr. Leibovitz that pretrial
> motions need to be filed  by June 9th, 2014 and responses by June 30th, 2014.
> D. The next return date was scheduled for July 24th, 2014, AP-1.

133.    Later that day, Mr. Leibovitz filed his Omnibus Motion where he requested that his case
be dismissed pursuant to CPL 170.30 , 170.40, and in the alternative if his case was not
dismissed, he requested discovery, bill of particulars, Brady Material, Hearings: Sandoval,
Dunaway and Huntley and for the Court to grant him leave to submit subsequent motions,
should facts discovered through this motion or hearings related to this motion, indicate that
additional relief may be warranted.

134.    On May 20th, 2014, Mr. Leibovitz filed a motion for reduction of bail with the Queens
Criminal Court and served the Queens County District Attorney's office.

135.    On June 3rd, 2014, Mr.  Leibovitz filed another motion, Motion to Dismiss pursuant to
CPL 170.30, CPL 170.35 that the statute defining the offense is unconstitutional or otherwise
invalid.  In his Memorandum of Law, Mr. Leibovitz cited the following case, Glik vs

Cunniffe, 655 F.3d 78 (1st Cir. 2011). The United States Court Of Appeals for the First Circuit held that a citizen's right to film government officials, including law enforcement officers, in the discharge of their duties in a public space is a basic, vital, and well-established liberty safeguarded by the First Amendment.

**June 4th. 2014 Mr. Leibovitz's recorded conversation with Defendant PISCIONERE, PEOPLE will dismiss Mr. Leibovitz's case on July 24th, 2015, not enough evidence to move forward**

136.    On June 4th, 2014, Mr. Leibovitz was notified upon calling Defendant PISCIONERE that the State of New York, on July 24, 2014 will voluntarily dismiss the charge against him, PL § 195.05: Obstructing Governmental Administration in the second degree, based on the grounds that the QDAO doesn't have enough evidence to go forward, however, QDAO was still going to prosecute Mr. Ward. Mr. Leibovitz was very happy to receive the great news that justice has seen its course but was concerned what evidence the QDAO had on Mr. Ward for them to prosecute him. Luckily, Mr. Leibovitz recorded the conversation that ensued between Defendant PISCIONERE and him.

**Please listen to Exhibit B on the enclosed disc**

137.    The conversation is clearly depicted on the video labeled Exhibit B on the enclosed disc.

    a.   Twenty seconds into the recording, you can see Mr. Leibovitz dialing (718) 286-5868, Defendant PISCIONERE's number.

    b.   Thirty-five seconds into the recording, Defendant PISCIONERE states she has great news for Mr. Leibovitz

    c.   Thirty- eight seconds into recording, Defendant PISCIONERE states we are dismissing your case not your co-defendant.

     d.   Forty-one seconds into recording, Etan Leibovitz asks on what grounds they are dismissing his case.

     e.   From forty-two seconds to forty-seven seconds, Defendant PISCIONERE states on the grounds we don't have enough evidence to go forward.

138.    On June 6th, 2014, Mr. Leibovitz entered Queens Civil Court. Upon going through the security scanning process, Mr. Leibovitz's "replacement phone" was once again confiscated by a court officer, vouchered and then returned to Mr. Leibovitz upon his departure.

139.    On June 13th, 2014, Mr. Leibovitz stopped by Queens Civil Court once again to verify the status of his pending case.  Upon going through the security scanning process to enter the courts, Mr. Leibovitz's "replacement cell phone" was once again confiscated by a Court Officer, shield # 2534, vouchered and then returned to Mr. Leibovitz upon his departure.

**Please See Exhibit C on the enclosed disc**

140.    On June 20th, 2014, Mr. Leibovitz entered Queens Civil Court and stopped by Defendant BARRY's office, located on the 3rd floor, to voice his concerns and inform Defendant BARRY that post arrest, every time Mr. Ward and Mr. Leibovitz entered the aforementioned courthouse both Mr. Ward's and his phone were being confiscated by the court officers, vouchered and then returned to them upon their departure.

**Please See Exhibit D on the enclosed disc**

141.    Defendant BARRY addressed Mr. Leibovitz's concerns by informing him that it's now a court policy to seize both Mr. Leibovitz and Mr. Ward's cell phones upon entry.

142.    Curious to know what law he broke, Mr. Leibovitz asked Defendant BARRY who

implemented this policy and what law was broken.[3]

143.    A little shaken up by Mr. Leibovitz's interrogation, Defendant BARRY responded stating he didn't know the exact law off the top of his head.  Mr. Leibovitz left off by asking if Defendant BARRY could provide him the following answers sometime next week. Defendant BARRY assured Mr. Leibovitz that he would have the answers for him and handed Mr. Leibovitz his contact card.

**Please See Exhibit E on the enclosed disc**


**The July 7th, 2014 Incident**


144.    On July 7th, 2014, at approximately 1:30 pm, Mr. Leibovitz entered Queens Civil Court and went through the usual security scanning process.  Mr. Leibovitz's "replacement cell phone" was once again confiscated by a Court Officer and  vouchered.  Mr. Leibovitz unwilling gave up his phone and then proceeded up to the third floor.

145.    Upon entering Defendant BARRY's office, Mr. Leibovitz was unfortunately notified by his secretary that Defendant BARRY stepped out.  Mr. Leibovitz left a letter with his secretary, requesting that Defendant BARRY review the Supremacy Clause and ex parte Young.

146.    Upon leaving Defendant BARRY's office, Mr. Leibovitz decided to stop by Defendant LOWE's office, room 367, which was adjacent to Defendant BARRY's office.

147.    Upon entering room 367, Mr. Leibovitz walked to Defendant LOWE's office which was situated all the way to the back. Inside Defendant LOWE's office stood Defendant LOWE to the right and a female court officer to the left.

---

[3] Mr. Leibovitz reserves the right to amend this complaint if during discovery Mr. Leibovitz finds out that Mr. Barry was responsible for implementing the Policy to confiscate Mr. Ward and Mr. Leibovitz's phones upon entry of Queens Civil Court and putting them at risk of harassment.

148.  Upon arrival, Mr. Leibovitz asked Defendant LOWE if he was currently aware that the one count for Obstructing Governmental Administration in the second degree against him was being dropped by the Queens County DA's office on July 24th, 2014.

149.  Defendant LOWE nonchalantly responded that he did not know that.

150.  Mr. Leibovitz followed up by stating that he was looking forward to seeing Defendant LOWE in Federal Court for violating his civil rights as well as Mr. Ward's.  Defendant LOWE responded, "I have seen Federal Court many times before".  Mr. Leibovitz left off by asking Defendant LOWE if he was familiar with the Supremacy Clause, Ex Parte Young and the Constitution.

151.  Defendant LOWE looked a little flustered that he was being questioned about his past misconduct, however, after a few minute he was finally able to collect himself and responded by saying that he was not aware.  Mr. Leibovitz then took a few minutes to explain the Supremacy Clause and advised Defendant LOWE to read up on it before he violates someone else's rights.

152.  Mr. Leibovitz then reiterated that he was looking forward to seeing Defendant LOWE in Federal Court one day.  Mr. Leibovitz then left Defendant LOWE's office and peacefully walked in the direction towards the exit door.

153.  While Mr. Leibovitz was walking towards the exit door, a court officer yelled "Fucking Punk".  Mr. Leibovitz smiled and said out loud, "Can't wait to see all of you who were involved in the April 16, 2014 false arrest in Federal Court."

154.  At approximately 1:45 pm, Mr. Leibovitz exited room 367 and peacefully walked over to the elevators.

155.  While Mr. Leibovitz was patiently waiting for the next elevator to arrive, Defendant LOWE retaliated by exiting room 367 with defendants John Doe Shield #687, John Doe #16 and John Doe #6814 by his side.  All the above aforementioned defendants started walking in

31

the direction towards Mr. Leibovitz.  Defendants John Doe Shield #687, John Doe #16 and John Doe #6814 surrounded Mr. Leibovitz, while Defendant LOWE stood approximately 10 feet away from Mr. Leibovitz, with Defendant LOWE's back facing room 367.  Defendant LOWE then threatened to arrest Mr. Leibovitz once again.

156.    Mr. Leibovitz replied, "I am not afraid to get arrested, please do.  What happens after, is the fun part, I will see you again in Federal Court.  Don't you know by now I am not afraid to get arrested!!!."

157.    The Northwest elevator arrived at the 3rd floor and Mr. Leibovitz proceeded to enter the elevator. Mr. Leibovitz then turned around and Defendant LOWE was in his face stating, "You are a punk.  You have a big mouth and you should watch out."

158.    Mr. Leibovitz then laughed and said, "How funny and ironic is this.  Where is my cell phone when I need it?  Why don't we go down stairs and you say this shit to me in front of the general public?"

159.    Realizing that Mr. Leibovitz was not afraid to get arrested nor intimidated, all of the four aforementioned defendants made a U-turn.

160.    Still emanating with anger and frustration that he didn't have his phone to record what just transpired, Mr. Leibovitz couldn't hold back and yelled you fucking punks.  The elevator door was half way closed when Defendant John Doe #687 got the door to open.

161.    Defendant LOWE once again got in Mr. Leibovitz's face and stated that Mr. Leibovitz was a punk.  Mr. Leibovitz replied, "Now you see the reason why we need phones (recording devices) it's for people like you."

162.    Defendant LOWE was then advised by John Doe #6814 and John Doe #687 to step back.  The aforementioned defendants then left the scene.

163.    Mr. Leibovitz took the elevator down to the first floor and handed over his property voucher to recover his "substitute phone".

164.    Before leaving the courthouse, Mr. Leibovitz yelled out loud for Defendant LOWE to

32

come downstairs and state exactly what he said to him in the elevator. Sadly, that afternoon Defendant LOWE didn't partake in Mr. Leibovitz's request to come downstairs.

165.    After the 3 to 4 minute outburst, exuding some mental anguish as a result of the April 16th, 2014 false arrest, Mr. Leibovitz peacefully left the courthouse and went directly to the Supreme Court Law Library. Mr. Leibovitz started typing a letter, directing it to Judge Golia, to inform her what just transpired on July 7th, 2014 in Queens Civil Court with Defendant LOWE.

**Please See Exhibit F on the enclosed disc**

166.    On July 8th, 2014, Mr. Leibovitz spoke to Defendant PISCIONERE and informed her that on July 7th, 2014, Defendants John Doe #16, John Doe Shield #687, John Doe Shield #6814 and Defendant LOWE were harassing him while he was in Queens Civil Court and threaten to arrest him once again. Mr. Leibovitz further informed Defendant PISCIONERE, that every time he enters Queens Civil Court, his "substitute phone" is confiscated by court officers, vouchered and then returned upon exiting. Defendant PISCIONERE reiterated that Mr. Leibovitz's criminal matter is being dismissed on July 24, 2014. At the conclusion of the conversation Defendant PISCIONERE refused to investigate and look into the aforementioned incident.

167.    On July 8th, 2014, Mr. Leibovitz filed the aforementioned letter with Queens Criminal Court and served the Queens DA's office.   Mr. Leibovitz emailed the aforementioned letter to Defendant BARRY as well. The letter emphasized the following key points:

      A.      Cameras hold public servants accountable;
      B.      Summarized the July 7th 2014 incident in Queens Civil Court;
      C.      Major Lowe needs to be investigated immediately

168.    Sometime after July 8th, 2014 but before July24, 2014, Mr. Leibovitz was informed by Defendant BARRY that Queens Civil Court no longer has surveillance cameras operating due to New York State failing to fix them.

169.   Upon hearing that Queens Civil Court no longer has operable surveillance cameras, Mr. Leibovitz then stated to Defendant BARRY now everything makes sense.

170.   On July 14th, 2014, Mr. Leibovitz once again reached out to Defendant BARRY by email to verify if he received his email and if he conducted an investigation with regards to Defendant LOWE's misconduct.   With no response to his emails, on July 18th, 2014 Mr. Leibovitz called Defendant BARRY and recorded the conversation.

171.   On July 22, 2014, Mr. Leibovitz called Defendant GIDDENS and informed her about his personal experience with regards to his arrest on April 16, 2014 and what recently happened to him on July 7th, 2014.   At the end of the conversation, Mr. Leibovitz informed Defendant GIDDENS that he recorded their conversation and now expects to make her accountable and for her to investigate Defendant LOWE.

**July 24th, 2014, AP-1 Calendar**

172.   On July 24th, 2014, Mr. Leibovitz arrived at Queens Criminal Court, AP1, with the anticipation that his case was going to be dismissed and that he could move on with his life. After being informed by Defendant PISCIONERE multiple times over the phone on June 4th as well as on July 8th, 2014, that his case was being dismissed based on the fact that QDAO doesn't have enough evidence to go forward, on July 24th, 2014 prior to going on the record, Defendant PISCIONERE notified Mr. Leibovitz that now QDAO are willing to dismiss his case on the condition that Mr. Ward takes an ACD.

173.   Mr. Leibovitz respectfully declined Defendant PISCIONERE's offer and stated that "Mr. Ward and I will not be taking no such offer."   Mr. Leibovitz warned Defendant PISCIONERE that he recorded their June 4th, 2014  conversation,  that she is now violating his rights by maliciously prosecuting him (admitting she doesn't have enough evidence to go forward), and participating in Professional Misconduct.

174.    Defendant PISCIONERE then stated to Mr. Leibovitz that she was instructed by her
supervisors to offer this conditional offer. Upon hearing this, Mr. Leibovitz deduced that
Defendant BARRY and Defendant GIDDENS called QDAO and spoke with Defendant
HERRING.

175.    On July 24th, 2014, Mr. Leibovitz and Mr. Ward's case was called on the AP-1 calendar
in front of the Honorable Morris. Prosecuting on behalf of the PEOPLE were Defendants
FOGARTY and PISCIONERE.  Mr. Gargiulo, legal advisor for both Mr. Ward and Mr.
Leibovitz, was present. The following transpired:

>    A.    Defendant PISCIONERE stated on the record that if Mr. Ward
>    withdraws his motions and pleas to the charge which is obstructing
>    governmental administration, then the PEOPLE will dismiss the case
>    against Mr. Leibovitz.
>    B.    Once again, but this time on the record, both Mr. Ward and Mr.
>    Leibovitz respectfully declined the PEOPLE's offer.
>    C.    As a result of Mr. Ward and Mr. Leibovitz both respectfully
>    declining the PEOPLE's offer, in retaliation, Defendant PISCIONERE
>    then stated that the PEOPLE will now be filing a superseding information
>    adding 2 counts of Disorderly Conduct.
>    D.    While still on the record, Defendant PISCIONERE served Mr.
>    Leibovitz the PEOPLE's response, dated July 23rd, 2014, to his Omnibus
>    motion. Back on May 15, 2014, Judge Golia ordered all parties to file
>    pretrial motions by June 9th, 2014 and responses by June 30th, 2014.
>    E.    Next court date was scheduled for September 30th, 2014.

176.    Sometime after June 4, 2014 but before July 24th, 2014, knowing that any colorable cause
to continue the prosecution against Mr. Leibovitz had evaporated,  "we don't have enough
evidence to go forward"[4], Defendant PISCIONERE, in the capacity of an investigator acted
in concert and conspired with Defendants HERRING, FOGARTY, GIDDENS, BARRY and
LOWE to use any means, no matter how unlawful, to gain complaining witness Defendant
BENNETT into falsely accusing the Plaintiff and Mr. Ward of two more discretionary

---

[4] June 4, 2014  Averment 136-137

charges, Disorderly Conduct PL 240.20 (2 and 6). [5]

177.   According to NY State Unified Court System Part 1200, Rules of Professional
Misconduct,   RULE 3.8. Special Responsibilities of Prosecutors and Other Government
Lawyers

(a)   A prosecutor or other government lawyer shall not institute, cause to
be instituted or maintain a criminal charge when the prosecutor or
other government lawyer knows or it is obvious that the charge is not
supported by probable cause.

178.   On July 28th, 2014, Mr. Leibovitz filed a complaint with the Supreme Court, Appellate
Division, Second Judicial Department against Defendant PISCIONERE. The complaint was
assigned the following case number, Q-1271-14.

179.   Under the 6th Amendment to the United States  constitution it states that:

In all criminal prosecutions, the accused shall enjoy the right to a
speedy and public trial, by an impartial jury of the State and
district wherein the crime shall have been committed, which
district shall have been previously ascertained by law, and to be
informed of the nature and cause of the accusation; **to be
confronted with the witnesses against him; to have compulsory
process for obtaining witnesses in his favor**, and to have the
Assistance of Counsel for his defense.

180.   On July 28th, 2014, Mr. Leibovitz filed a motion to recuse Defendant PISCIONERE as
well as QDAO.   Defendant PISCIOENERE's conflict as a witness for Mr. Leibovitz's
defense is imputed upon the entire QDAO.

---

[5] In recognizing a distinction between advocacy and investigation, the functional approach requires the drawing of
difficult and subtle distinctions, and I understand the necessity for a workable standard in this area. But the rule
the Court adopts has created more problems than it has solved. For example, even after there is probable cause to
arrest a suspect or after a suspect is indicted, a prosecutor might act to further police investigative work, say by
finding new leads, in which case only qualified immunity should apply. BUCKLEY v. FITZSIMMONS, 509 U. S. 259
(1993) post at 290

181.   To succeed upon a motion to disqualify a specific prosecutor from litigating a case before a jury, a defendant must make a showing that the pretrial activity of the assistant district attorney would render his trial participation unfair. Paperno, supra at 302. The showing for this relief requires that the defendant demonstrate that there is a significant possibility that the prosecutor's pretrial activity would be a material issue in the case. Id. (emphasis added); see also People v. Cannady, 243 A.D.2d 642, 663 N.Y.S.2d 244 (2d Dept. 1997).

182.   On September 2, 2014, Mr. Leibovitz filed a motion for an appointment of a private investigator with the Queens Criminal Court and served the QDAO.

183.   Five months after the initial arrest, on September 19, 2014, pursuant to CPL 170.65, Defendant PISCIOENERE filed and served a superseding information adding two more discretionary charges, Disorderly Conduct PL 240.20 (2 and 6) for both Mr. Ward and Mr. Leibovitz.

184.   On September 24th, 2014, Defendant PISCIONERE, in the capacity of an investigator acted to gain complaining witness Defendant BENNETT into falsely accusing the Plaintiff and Mr. Ward of two more discretionary charges, Disorderly Conduct PL 240.20 (2 and 6). The following was added to the accusatory instrument from the original misdemeanor complaint to form the superseding information:

> Deponent further states that the defendants were yelling and screaming in the hallways of the above mentioned location causing a crowd to gather and public inconvenience, annoyance, and alarm.

185.   In Mr. Leibovitz's superseding information, Defendant BENNETT, of Queens Civil Court, Tax Reg#: 517100, being duly sworn, deposes and says that:

> The above offense was committed as follows:
>
> On or about April 16th, 2014 between 10:05AM and 10:25AM, inside of 89-17 SUTPHIN BOULEVARD (QUEENS CIVIL COURT), COUNTY OF QUEENS, STATE OF NEW YORK, the defendants committed the offense of:

PL 195.05 OBSTRUCTING GOVERNMENTAL
ADMINISTRATION IN THE SECOND DEGREE,
PL 240.20-2 DISORDERLY CONDUCT and
PL 240-20-6 DISORDERLY CONDUCT

Deponent states that at the above mentioned date, time , and place of occurrence the defendants, Etan M. Leibovitz and Kenneth J Ward Jr. were inside of the above mentioned location, which is the Queens Civil Court House.

Deponent further states that the defendant, Etan M. Leibovitz, took out his phone and proceeded to record on his phone in the vestibule area of the court room.

Deponent further states that when she approached the defendant, Etan M. Leibovitz, and instructed him to stop recording with his phone, the defendant refused to comply with the deponent's lawful order and continued to record.

Deponent further states that when the defendant, Etan M. Leibovitz, was approached by Lieutenant O'Brien, the defendant, Kenneth J. Ward Jr. stepped in between Lieutenant O'Brien and the defendant, Etan M. Leibovitz, and obstructed the above mentioned investigation.

Deponent further states that the defendants were yelling and screaming in the hallways of the above mentioned location causing a crowd to gather and public inconvenience, annoyance, and alarm.

Deponent further states that she ordered the defendants to disperse and that the defendants refused to comply with said order.

186.    Sometime after September 20, 2014 but before November 21, 2014, Defendant
         PISCIONERE no longer was assigned to the prosecution of Mr. Leibovitz and Mr. Ward.

**September 30th, 2014, AP-1 Calendar**

187.    On September 30, 2014, Mr. Leibovitz and Mr. Ward's case was called on the AP-1

calendar in front of the Honorable Zaro. Prosecuting on behalf of the PEOPLE was

Defendant FOGARTY.  Mr. Gargiulo, legal advisor for both Mr. Ward and Mr. Leibovitz,

was present. The following transpired:

      A.    18B lawyer Darryl Fox was assigned to Mr. Ward as his legal advisor

      B.    The PEOPLE notified the Court that they filed a superseding
          information.

      C.    Judge Zaro adjourned for October 20, 2014


**October 20th, 2014, AP-1 Calendar**

188.    On October 20th, 2014, Mr. Leibovitz and Mr. Ward's case was called on the AP-1

calendar in front of the Honorable Melendez. Prosecuting on behalf of the PEOPLE was

defendant FOGARTY. Both Mr. Ward and Mr. Leibovitz's legal advisors were present. The

following transpired:

      A.    As a result of the Court not being able to "locate" the Court's
      decision and order for Mr. Leibovitz's April 21, 2014, Motion to
      Dismiss, the Honorable Melendez instituted a call back so that the court
      could attempt to locate the aforementioned papers.
      B.    On the call back, Justice Melendez adjourned for November 17th,
      2014. The Court didn't render a decision and order for Mr. Leibovitz's
      Motion, only for Mr. Ward.

189.    On October 28, 2014, Mr. Leibovitz wrote a letter to both New York State Attorney

General Eric Schneiderman and Governor Cuomo informing them what was transpiring in

Queens Criminal Court with regards to his case.


190.    On October 31th, 2014, Mr. Leibovitz filed a motion for reduction of bail with the

Queens Criminal Court and served the Queens County District Attorney's office.

191.   On November 5th, 2014, Mr. Leibovitz filed a motion to dismiss the superseding information pursuant to CPL 170.30 (1) (c) N.Y. CPL. LAW § 170.35 : NY Code - Section 170.35: (c) The statutes defining the offense charged is unconstitutional or otherwise invalid with the Queens Criminal Court and served the Queens County District Attorney's office.

192.   On November 12th, 2014, Mr. Leibovitz filed another motion for an appointment of a private investigator, (which perfected his September 2, 2014 motion) with the Queens Criminal Court and served the Queens County District Attorney's office.

## November 17th, 2014, AP-1 Calendar

193.   On November 17th, 2014, Mr. Leibovitz and Mr. Ward's case was called on the AP-1 calendar in front of the Honorable Morris. Prosecuting on behalf of the PEOPLE was defendant FOGARTY. Both Mr. Ward and Mr. Leibovitz's legal advisors were present. The following transpired:

   A. Defendant HERRING made an appearance for the PEOPLE and stated that the PEOPLE dismissed the top count, Obstructing Governmental Administration in the second degree, in the information for both Mr. Leibovitz and Mr. Ward, leaving only two counts of Disorderly Conduct.

   B. The Honorable Justice G. Morris questioned Defendant HERRING if he is sure he wants to do that.   Defendant HERRING once again stated that the PEOPLE dismissed the top count for both Mr. Leibovitz and Mr. Ward

   C. The Honorable Justice G. Morris then asked the PEOPLE if they have an offer for both Mr. Leibovitz and Mr. Ward.

   D. The PEOPLE offered both Mr. Leibovitz and Mr. Ward an ACD (Adjournment in Contemplation of Dismissal) for which both Mr. Leibovitz and Mr. Ward respectfully declined.

   E. The Honorable Justice G. Morris stated that the Court hasn't yet rendered a decision for Mr. Leibovitz's Motion to Recuse.  The aforementioned motion was referred to the Honorable Joseph Zayas.

   F. The Honorable Morris further stated that she will have a decision rendered for Mr. Leibovitz's April 21, 2014 Motion to Dismiss by this

Friday.  The Court will serve Judge Morris's decision off calendar with Mr. Gargiulo.

G. Both Mr. Ward and Mr. Leibovitz expressed their concerns that the PEOPLE have not complied with their prior discovery demands pursuant to Article 240, which included requests for video surveillance footage from Queens Civil Court, April 16th, 2014 arrest and July 7th, 2014 incident.

H. In court while still on the record, Mr. Leibovitz served the Court and the PEOPLE once again with new discovery demands. The Honorable Justice G. Morris ordered the PEOPLE to comply with both Mr. Ward and Mr. Leibovitz's discovery demands by December 15, 2014.

I. The Honorable Justice G. Morris replied to Mr. Leibovitz's inquiry by stating that she doesn't believe the Queens Civil Court would have video footage because they don't have cameras.

194.   On November 20, 2014, Mr. Gargiulo was served off calendar with the Honorable Morris's decision and order for Mr. Leibovitz's April 21, 2014 Motion to Dismiss.

195.   On November 28, 2014, Mr.  Leibovitz received by mail the PEOPLE's opposition papers to his Motion to Recuse the Queens County DA's Office and Defendant PISCIONERE.

196.   On December 1, 2014, Mr.  Leibovitz filed his reply papers to the PEOPLE's Opposition to Mr. Leibovitz's Motion to Recuse with the Queens Criminal Court and served the Queens District Attorney's Office.

197.   In the PEOPLE's opposition, the PEOPLE cite the following case People v. Cosentino, 7 Misc. 3d 1022(A), 801 N.Y.S. 2d 239 (Sup. Ct Queens Co. May 12, 2005) to argue their position.  ADA Heather Marshall argues that the Queens District Attorney should not be recused because there would be no conflict.

198.   In the reply, Mr. Leibovitz disagrees with ADA Heather Marshall's assessment for the pure fact that Mr. Ward and Mr. Leibovitz  have:

A.      Attacked the Queens County DA's Office multiple times on the record for using bullying tactics;

B.      Defendant PISCIONERE will testify in Mr. Leibovitz's favor and thus she should be disqualified from trying this case.

C.      Not only should Defendant PISCIONERE be recused but the Queens County District Attorney's Office should as well because Defendant PISCIONERE's conflict as a witness is imputed upon the entire office.

D.      QDAO covering up for the Queens Civil Court's employees during the criminal proceeding;

E.      QDAO investigation or lack thereof;

F.      Discovery:  Failure to comply with Court Orders;

G.      QDAO Prosecutorial Misconduct: Defendant PISCIONERE and supervisors;

H.      Mr. Leibovitz filed a grievances against Defendant PISCIONERE with the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts File No: Q-1271-14;

I.      Notice of claim has been filed with the city and Court of Claims.

199.    Sometime in early December 2014, Mr. Ward reached out multiple times to Assistant District Attorney Daniel O'Leary from the QDAO's Integrity Bureau expressing his concerns about the corruption in the QDAO.

200.    Sometime after December 30, 2014 but before January 5th, 2015, Mr. Leibovitz received by mail the PEOPLE's response to his Demand for Discovery.

201.    On January 12, 2015, Mr.  Leibovitz filed a motion for an order issuing a subpoena duces tecum with the NYS Unified Court System Office of Court Administration requesting original video footage, for the following dates:

        a. Video Camera Footage:
        Date:  April 16th, 2014
        Location:  Queens Civil Court located on 89-17 Sutphin Blvd, County of Queens, New York State 11435
        Floors: 1st, 2nd, 3rd and 4th floor
        Duration:  9:00 am - 4:30 pm
        b. Video Camera Footage:
        Date:  April 16th, 2014

42

Location: Queens Civil Court located on 89-17 Sutphin Blvd, County of Queens, New York State 11435

Floor: 1st floor Inside Office (by main entrance and scanning machines where a holding cell exist and court officer are stationed by the window)

Duration: April 16th, 2014 , 9:20 a.m. to11:59 pm

c. Video Camera Footage:

Date: July 7th, 2014

Location: Queens Civil Court located on 89-17 Sutphin Blvd, County of Queens, New York State 11435

Floor: 3rd floor  1) Major Lowe's office Room 367

 2) Deputy Barry's Office 361

3) by the 3rd floor elevators/ vestibule hallways (Northwest Elevator)

Duration: July 7th, 2014   1:00 pm to 5pm

202. With the PEOPLE dismissing the original top count of Obstruction Governmental Administration in the superseding information on November 17th, 2014, on January 12, 2015, Mr. Leibovitz filed another Motion to Dismiss.  In Mr. Leibovitz's affidavit, he deposes and says:

a) On the 16th day of April, 2014 a complaint was filed in Queens Criminal Court of Queens County docket number: 2014QN021751.

b) On June 4th, 2014, ADA Taylor Piscionere informed me via a telephone conversation that I recorded, that she had great news that the DA's office is dropping my case . I asked on what grounds for which ADA Taylor Piscionere stated , "that they don't have evidence" but they are  still going to prosecute my codefendant Mr. Ward.

c) The reason ADA Piscionere had no evidence to prosecute me was because one of the elements that is required (in order) to convict someone of Obstruction Governmental Administration, is that a public servant must be engaged in a "specific action at the time of the physical interference, and not just on duty".

d) The original charge for the Misdemeanor complaint, in reference to Mr. Leibovitz, is thus on its face insufficient and should be dismissed thus making the superseding information a nullity.

e)   ADA Piscionere was still willing to prosecute my codefendant Mr. Ward because in the misdemeanor complaint allegation number 5 pleads the aforementioned element. However at no point did Mr. Ward ever obstruct nor step in between Lieutenant O'Brien. The Queens County DA's office would have come to this conclusion if they took the time to investigate and ask witnesses at the scene.

f)   On July 24th, 2014, I arrived at the Queens Criminal Court with the anticipation that my case was going to be dismissed and that I could move on with my life. What transpired in court that day was complete misconduct on the part of the Queens County DA's office and ADA Piscionere (New York State Unified Court System Form 1200 Rule 3.8). After being told by ADA Piscionere multiple times on June 4th, 2014, that my case was being dismissed based on the fact that the People have no evidence, on July 24th, 2014 ADA Piscionere prior to going on the record notified me that now the Queens DA's office is willing to dismiss my case on the condition that Mr. Ward takes an ACD.

g)   I told ADA Piscionere that both Mr. Ward and I will not be taking such an offer. I warned Ms. Piscionere that I recorded our June 4th, 2014 conversation that she is now violating my rights by maliciously prosecuting me (admitting she has no evidence on me) , and participating in Professional Misconduct.

h)   On July 24th, 2014, ADA Piscionere stated on the record that the People are offering the following: That the People are willing to dismiss Mr. Leibovitz 's case on the condition that Mr. Ward takes an ACD.

i)   This time on the record both Mr. Ward and I refused the People's offer.

j)   As a result of Mr. Ward and I refusing to take such an offer, ADA Piscionere then stated on the record that the People will be filing a superseding information adding Disorderly Conduct.

k)   On September 19, 2014, in retaliation to Mr. Ward and I refusing the People's offer, ADA Piscionere then filed a superseding information pursuant to CPL 170.65(2) adding two more discretionary charges, Disorderly Conduct PL 240.20 (2 and 6).

l)   On November 17, 2014, the People dropped the charge of PL§ 195.05 Obstructing governmental administration in the second degree against both Mr. Ward and I.

m) The reason the People dismissed Mr. Ward's top charge down to a violation was so that they could have a bench trial.

n) By the People dropping the initial charge of PL§ 195.05 Obstructing governmental administration in the second degree, arresting officer Defendant BENNETT's "initial alleged probable cause" to arrest Mr. Leibovitz from day one is non-existent.

**January 20th, 2015, AP-1 Calendar**

203. On January 20th, 2015, Mr. Leibovitz and Mr. Ward's case was called on the AP-1 calendar in front of the Honorable Donna Golia. Prosecuting on behalf of the PEOPLE was defendant FOGARTY. Both Mr. Ward and Mr. Leibovitz's legal advisors were present. The following transpired:

    A. Mr. Leibovitz stated on the record that he has approximately 11 motions that decisions have not been rendered and that the PEOPLE still have not complied with both Mr. Ward and Mr. Leibovitz's discovery demands.

    B. The Honorable Donna Golia ordered the PEOPLE to comply with both Mr. Ward and Mr. Leibovitz's discovery demands by February 10, 2015.

    C. The next Court date was scheduled for March 18th, 2015

204. On February 10th, 2015, the PEOPLE failed to comply with the Court's Order to serve both Mr. Ward and Mr. Leibovitz with their discovery demands.

205. Sometime in early February 2015, Mr. Leibovitz reached out multiple times to Assistant District Attorney Daniel O'Leary from the QDAO's Integrity Bureau expressing his concerns about the corruption in the QDAO. Mr. Leibovitz informed Mr. O'Leary about Floyd Herring, who caused Mr. Leibovitz's unconstitutional prosecution and orchestrated the subsequent, 8-months cover-up of the District Attorney Brown's Office misconduct. Mr. Leibovitz further informed Mr. O'Leary that HERRING engaged in a series of abuse of

process in fraudulent and deceptive acts all caused by and consistent with QDAO's unlawful policies, in order to prosecute him.  Mr. O'Leary refused to investigate.

## March 18th, 2015, AP-1 Calendar

206.    On March 18th, 2015, Mr. Leibovitz and Mr. Ward's case was called on the AP-1 calendar in front of the Honorable Dibiase. Prosecuting on behalf of the PEOPLE was Defendant FOGARTY. Both Mr. Ward and Mr. Leibovitz's legal advisors were present. The following transpired:

    A.    Judge Zayas's decision and order with regards to Mr. Leibovitz's Motion to Recuse the QDAO as well as Defendant PISCIONERE was served on both the PEOPLE and Mr. Leibovitz. Judge Zayas denied Mr. Leibovitz's motion.
    B.    The Honorable Dibiase pushed for Mr. Leibovitz and Mr. Ward's case to go on for trial. Both Mr. Leibovitz and Mr. Ward protested that decisions for their motions have not been rendered.
    C.    The next Court date was scheduled for April 17th, 2015

207.    On March 27th, 2015, Mr. Leibovitz placed a call to Defendant BARRY's office and a dialogue ensued. Mr. Leibovitz was informed by Defendant BARRY that as of last week, the third floor cameras in Queens Civil Court "are now up to speed" but was unsure if all the other cameras in Queens Civil court were operating.  On April 16th, 2014 and July 7th, 2014. with no surveillance cameras operating on the third floor, court officers were free to do anything without any accountability.

**Please See Exhibit G on the enclosed disc**

## FIRST CAUSE OF ACTION

(42 U.S.C. § 1983/ Fourth Amendment;
Against Defendants Lowe and Bennett)

208.   Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

209.   Plaintiff advances this claim against Defendants LOWE and BENNETT.

210.   By reason of the foregoing, and by arresting Plaintiff without probable cause, Defendants LOWE and BENNETT deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States and secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth Amendment to the United States Constitution to be free from false arrest and false imprisonment.

211.   By reason of the foregoing, Defendants LOWE and BENNETT, acting intentionally, maliciously, and without justification or probable cause, caused accusatory instruments to be filed and otherwise brought criminal charges against Plaintiff, who was held in Department of Corrections, custody on charges that were ultimately "dismissed" by the Queens County District Attorney's Office.

212.   The wrongful, unjustifiable, and unlawful apprehensions, arrests, detentions and imprisonment of Plaintiff were carried out without a valid bench warrant, without a valid misdemeanor warrant, without his consent, and without probable cause or reasonable suspicion.

213.   The forcible stop, arrest, detention and imprisonment, Defendants LOWE and BENNETT, acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment as New York State Court Officer and Major. Defendants LOWE and BENNETT, acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. These defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured

by 42 U.S.C. § 1983, and by the Fourth Amendment to the United States Constitution.

214.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

215.    As a result of Defendants LOWE and BENNETT impermissible conduct, the Plaintiff was injured and harmed. Accordingly, the Plaintiff demands judgment against Defendants Richard LOWE and BENNETT in a sum of money to be determined at trial.

## SECOND CAUSE OF ACTION

( 42 U.S.C. §1983; Failure to Intervene
Under the Fourth and Fourteenth; Defendants
O'Brien, John Doe Shield # 6814, #3814,
#7910, John Does 1-15)

216.    Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

217.    Defendants O'Brien, John Doe Shield # 6814, #3814, #7910, John Does 1-15 had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights.

218.    Defendants O'Brien, John Doe Shield # 6814, #3814, #7910, John Does 1-15 failed to intervene on Plaintiff's behalf in order to prevent the violation of his constitutional rights despite having a realistic opportunity to do so.

219.    Defendants O'Brien, John Doe Shield # 6814, #3814, #7910, John Does 1-15 failed to

intervene on Plaintiff's behalf in order to prevent the violation of his rights despite having contributed to the circumstances within which Plaintiff's rights were violated by Defendants BENNETT and LOWE.

220.    Defendants O'Brien, John Doe Shield # 6814, #3814, #7910, John Does 1-15  failed to intervene on Plaintiff's behalf in order to prevent the violation of Plaintiff's constitutional rights despite Defendants O'Brien, John Doe Shield # 6814, #3814, #7910, John Does 1-15 awareness that Plaintiff's rights were being violated.

221.    As a result of the aforementioned conduct of the individual defendants, Plaintiff's constitutional rights were violated.

222.    As a result of Defendants O'Brien, John Doe Shield # 6814, #3814, #7910, John Does 1-15 impermissible conduct, the Plaintiff was injured and harmed. Accordingly, the Plaintiff demands judgment against Defendants O'Brien, John Doe Shield # 6814, #3814, #7910, John Does 1-15 in a sum of money to be determined at trial.

## THIRD CAUSE OF ACTION

( 42 U.S.C. §1983; Freedom of Speech / Seizure of Phone
Under the First and Fourth; Defendants Lowe and
Barry)

223.    Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

224.    All of the aforementioned acts of Defendants Lowe and Barry were carried out under the color of state law, in their capacities as Major and Deputy Clerk at Queens Civil Court, pursuant to the customs, usages, practices, procedures, and the rules of the STATE OF NEW

YORK and New York State Unified Court System.

225.   All of the foregoing acts by Defendants Lowe and Barry deprived Plaintiff of federally protected rights, including, but not limited to, the right:

>   A.  To freedom of speech and expression; and
>
>   B.  To be free from seizure;

226.   All of the aforementioned acts deprived Plaintiff of his rights, privileges and immunities guaranteed to citizens of the United States by the First and Fourth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983.

227.   As a result of Defendants impermissible conduct, Plaintiff was injured and harmed. Accordingly, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## FOURTH CAUSE OF ACTION

( 42 U.S.C. §1983; Failure to Intervene
Under the Fourth and Fourteenth; Defendants
John Doe Shield #687, #6814
and John Doe #16)

228.   Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

229.   Defendants John Doe Shield #687, #6814 and John Doe #16 had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights.

230.  Defendants John Doe Shield #687, #6814 and John Doe #16 failed to intervene on Plaintiff's behalf in order to prevent the violation of his constitutional rights despite having a realistic opportunity to do so.

231.  Defendants John Doe Shield #687, #6814 and John Doe #16 failed to intervene on Plaintiff's behalf in order to prevent the violation of his rights despite having contributed to the circumstances within which Plaintiff's rights were violated by Defendants LOWE.

232.  Defendants John Doe Shield #687, #6814 and  John Doe #16 failed to intervene on Plaintiff's behalf in order to prevent the violation of Plaintiff's constitutional rights despite Defendants John Doe Shield #687, #6814  and  John Doe #16 awareness that Plaintiff's rights were being violated.

233.  As a result of the aforementioned conduct of the individual defendants, Plaintiff's constitutional rights were violated.

234.  As a result of John Doe Shield #687, #6814 and John Doe #16 impermissible conduct, the Plaintiff was injured and harmed. Accordingly, the Plaintiff demands judgment against Defendants John Doe Shield #687, #6814 and John Doe #16 in a sum of money to be determined at trial.

### FIFTH  CAUSE OF ACTION

( 42 U.S.C. §1983; Failure to Intervene
Under the Fourth and Fourteenth; Defendants
Giddens and Barry)

235.  Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

51

236.   Defendants Giddens and Barry had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights.

237.   Defendants Giddens and Barry failed to intervene on Plaintiff's behalf in order to prevent the violation of his constitutional rights despite having a realistic opportunity to do so.

238.   Defendants Giddens and Barry failed to intervene on Plaintiff's behalf in order to prevent the violation of his rights despite having contributed to the circumstances within which Plaintiff's rights were violated by Defendants BENNETT and LOWE.

239.   Defendants Giddens and Barry failed to intervene on Plaintiff's behalf in order to prevent the violation of Plaintiff's constitutional rights despite Giddens and Barry awareness that Plaintiff's rights were being violated.

240.   As a result of the aforementioned conduct of the individual defendants, Plaintiff's constitutional rights were violated.

241.   As a result of Defendants Giddens and Barry impermissible conduct, the Plaintiff was injured and harmed. Accordingly, the Plaintiff demands judgment against Defendants Giddens and Barry in a sum of money to be determined at trial.

## SIXTH CAUSE OF ACTION

**(42 U.S.C. §1983; Denial of Due Process
Under the Fifth, Sixth and Fourteenth Amendments;
Malicious Prosecution, Abuse of Process, and Deprivation of
Liberty under the Fourth, Fifth, Sixth, and Fourteenth
Amendments; Defendants Piscionere, Herring,
Fogarty, Giddens, Barry, Lowe and Bennett)**

242.　　Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

243.　　Sometime after July 22nd, 2014 but before July 24th, 2014, knowing that any colorable cause to continue the prosecution against Mr. Leibovitz had evaporated, Defendant PISCIONERE, in the capacity of an investigator acted in concert and conspired with Defendants HERRING, FOGARTY, GIDDENS, BARRY, LOWE to use any means, no matter how unlawful, to gain complaining witness Defendant BENNETT into falsely accusing the Plaintiff and Mr. Ward of two more discretionary charges, Disorderly Conduct PL 240.20 (2 and 6).

244.　　Specifically, Defendants Piscionere, Herring, Fogarty, Barry, Lowe, Bennett and Giddens, individually, in concert with, conspiring with, and/or aiding and abetting one another and other persons for whose acts they are liable, while acting in an investigative or administrative capacity, conspired with defendant Bennett, the complaining witness, into making false allegations,  and committing perjury in the accusatory instrument in order to file a superseding information to be used against Plaintiff, continuation of false and unfounded criminal charges against Plaintiff while lacking probable cause to do so and then unlawfully concealed exculpatory or impeachment evidence known as "Brady" material, and lied to or misled court and both Mr. Ward and Mr. Leibovitz in order to cover up their unlawful behavior and repeatedly and continually lied to and defrauded the court concerning the existence of evidence favorable to Plaintiff . By virtue of the foregoing, Plaintiff was caused the actual damages identified in averment 202 (specifically N ).

53

245. Defendants used such process in a perverted manner to obtain a collateral objective outside the legitimate ends of the process used. Defendants did so with an intent to do harm to Plaintiff, with actual malice, and without excuse or justification.

246. By virtue of the foregoing, Plaintiff was caused the actual damages identified in 172-177, 183 and 185.

247. These lawless actions foreseeably caused Defendant BENNETT to manufacture false evidence which Defendant PISCIONERE, HERRING, FOGARTY then used to continue Plaintiff's malicious prosecution, without probable cause.

248. Additionally, defendants PISCIONERE, FOGARTY and HERRING, acting in an investigative or administrative capacity, had a duty to Plaintiff to carry out the Office's ongoing obligation, pursuant to the Due Process Clause of the Constitution and Brady v. Maryland, 373 U.S. 83 (1963), to disclose, upon Plaintiff's request, documents and information favorable to Plaintiff with respect to his criminal prosecution. Nevertheless, acting in concert, said defendants knowingly, willfully, recklessly, and/or with deliberate indifference to their Constitutional and statutory obligations, failed to disclose said documents and information to Plaintiff, thereby substantially delaying Plaintiff's effort to terminate the malicious prosecution.

249. The aforesaid conduct operated to deprive Plaintiff of his rights under the Constitution and the Laws of the United States:

(a) Not to be arrested, charged, prosecuted, detained, or imprisoned based upon false, fabricated, manufactured, misleading, or inherently unreliable "evidence," including the statements and testimony of witnesses who have been improperly influenced and manipulated to provide such statements in violation of the Fourth and Fourteenth Amendments, and the Due Process to the United States Constitution;

54

(b) Not to be deprived of his liberty absent probable cause to believe he has committed a crime, in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution; and

(c) To timely disclosure of all material evidence favorable to the defense pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and the Due Process Clauses of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

250.    The foregoing violations of Plaintiff's federal constitutional rights by the Defendants, caused the continuation of Plaintiff's malicious prosecution without probable cause and his other injuries and damages.

251.    The foregoing violations of Plaintiff's rights amounted to Constitutional torts and were affected by actions taken under color of State law, and within the scope of the Defendants's employment and authority.

252.    Defendants committed the foregoing violations of Plaintiff's rights knowingly, intentionally, willfully, recklessly, negligently, and/or with deliberate indifference to Plaintiff's constitutional rights or to the effect of such misconduct upon Plaintiff's constitutional rights.

253.    By reason of the foregoing, the Defendants are liable to Plaintiff, pursuant to 42 U.S.C. § 1983, for compensatory and for punitive damages.

## SEVENTH CAUSE OF ACTION

(False Imprisonment and Arrest under New York State Law;
Defendants Lowe and Bennett)

254.    Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the
above paragraphs with the same force and effect as if fully set forth herein.

255.    Plaintiff advances this claim against Defendants LOWE and BENNETT.

256.    As a result of the aforesaid conduct by Defendants LOWE and BENNETT, the Plaintiff
was unlawfully detained and confined. Defendants LOWE and BENNETT in performance
of their duties with powers and authorities designated upon them by the State of New York –
— intentionally confined Mr. Leibovitz.

257.    Plaintiff was at all times consciously aware of his confinement by Defendants LOWE and
BENNETT.

258.    At no point throughout Plaintiff's unlawful detention and confinement by Defendants
LOWE and BENNETT did the Plaintiff consent to said confinement.

259.    At no point throughout Plaintiff's unlawful detention and confinement by Defendants
LOWE and BENNETT were the actions of Defendants LOWE and BENNETT otherwise
privileged.

260.    As a result of Defendants LOWE and BENNETT impermissible conduct, Plaintiff was
injured and harmed. Accordingly, Plaintiff demands judgment against Defendants LOWE
and BENNETT in a sum of money to be determined at trial.

## EIGHTH CAUSE OF ACTION

(Assault and Battery under New York State Law
Against Defendants Marie Bennett and Major Lowe)

261.   Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the
above paragraphs with the same force and effect as if fully set forth herein.

262.   Plaintiff advances this claim against Defendants LOWE and BENNETT.

263.   Defendants LOWE and BENNETT committed battery upon the Plaintiff in her and his
acts of making bodily contact with the Plaintiff by handcuffing him in the absence of
probable cause to arrest.

264.   Defendants LOWE and BENNETT performed these acts of making bodily contact with
the Plaintiff with the intent to do so.

265.   Defendants LOWE and BENNETT acts of making bodily contact with the Plaintiff were
subjectively offensive in nature to the Plaintiff.

266.   Defendants LOWE and BENNETT acts of making bodily contact with the Plaintiff
would be objectively offensive in nature to a reasonable person aware of the circumstances of
Plaintiff's arrest.

267.   Defendants LOWE and BENNETT performed these acts of making bodily contact with
the Plaintiff without privilege or consent from the Plaintiff.

268.   As a result of Defendants LOWE and BENNETT's conduct, the Plaintiff suffered
emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, damage to his
reputation and standings within his community and legal hours of work to defend himself
from the baseless charge.

269.   As a result of Defendants LOWE and BENNETT's impermissible conduct, the Plaintiff

was injured and harmed. Accordingly, the Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

### NINETH CAUSE OF ACTION

(Deprivation of Plaintiff's Rights as
Guaranteed by the New York State Constitution;
Defendants Barry and Lowe)

270.    Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

271.    As a result of the aforesaid conduct of Defendants Barry and Lowe, Plaintiff was deprived of rights guaranteed to him by the New York State Constitution, including though not limited to:

> A.    The right of the people to freely speak their sentiments on all subjects as described in Article I § 8 of the New York State Constitution.
> B.    The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures as described in Article I § 12 of the New York State Constitution.

272.    The acts complained of, were carried out by Defendants Barry and Lowe in their capacities as New York State Court Officers, Deputy Clerk and Major with all of the actual and/or apparent authority attendant thereto, pursuant to the customs, usages, practices, procedures, and the rules of the state of New York and the New York State Unified Court System.

273.    Defendants Barry and Lowe, collectively and individually, while acting under color of state law violated Plaintiff's constitutional rights by engaging in conduct proscribed by the

New York State Constitution.

274.    As a result of Defendants Barry and Lowe impermissible conduct, Plaintiff was injured
        and harmed. Accordingly, Plaintiff demands judgment against Defendants Barry and Lowe in
        a sum of money to be determined at trial.


### TENTH CAUSE OF ACTION

(Assault under New York State Law
Against Defendants Major Lowe)

275.    Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the
        above paragraphs with the same force and effect as if fully set forth herein.

276.    Plaintiff advances this claim against Defendants LOWE.


277.    By the conduct and actions described above, Defendant LOWE inflicted the tort of
        assault,  on July 7th, 2014, upon the Plaintiff. The acts and conduct of Defendant LOWE were
        the direct and proximate cause of injury and damage to Plaintiff and violated Plaintiff's
        statutory and common law rights as guaranteed by the laws and Constitution of the State of
        New York.


278.    Defendants LOWE's acts constituted an assault upon Plaintiff in that LOWE
        intentionally attempted to injure Plaintiff and further that LOWE's acts represented a
        grievous affront to Plaintiff.

279.    The injuries sustained by Plaintiff were caused wholly and solely by reason of the
        conduct described and Plaintiff did not contribute thereto.


280.    As a direct and proximate result of the foregoing, Plaintiff was subjected to great

emotional pain, fear, anxiety, anguish and humiliation.

281.    As a result of Defendants Lowe impermissible conduct, Plaintiff was injured and harmed.
Accordingly, Plaintiff demands judgment against Defendants Lowe in a sum of money to be
determined at trial.

## ELEVENTH CAUSE OF ACTION

(Abuse of Process under State Law;
Defendants Piscionere, Herring, Fogarty,
Barry, Lowe, Bennett and Giddens)

282.    Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the
above paragraphs with the same force and effect as if fully set forth herein.

283.    Specifically, Defendants Piscionere, Herring, Fogarty, Barry, Lowe, Bennett and
Giddens, individually, in concert with, conspiring with, and/or aiding and abetting one
another and other persons for whose acts they are liable, while acting in an investigative or
administrative capacity, conspired with defendant Bennett, the complaining witness, into
making false allegations,  and committing perjury in the accusatory instrument in order to file
a superseding information to be used against Plaintiff, continuation of false and unfounded
criminal charges against Plaintiff while lacking probable cause to do so and then unlawfully
concealed exculpatory or impeachment evidence known as "Brady" material, and lied to or
misled court and both Mr. Ward and Mr. Leibovitz in order to cover up their unlawful
behavior and repeatedly and continually lied to and defrauded the court concerning the
existence of evidence favorable to Plaintiff .

284.   Defendants used such process in a perverted manner to obtain a collateral objective outside the legitimate ends of the process used.  Defendants did so with an intent to do harm to Plaintiff, with actual malice, and without excuse or justification.

285.   By virtue of the foregoing, Plaintiff was caused the actual  damages identified in 172-177, 183 and 185.

286.   Defendant City of New York is liable under the principle of respondeat superior.

287.   As a result of all Defendants impermissible conduct, Plaintiff was injured and harmed.

288.   Accordingly, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.


### TWELFTH CAUSE OF ACTION

(Deprivation of Plaintiff's Rights as Guaranteed
by the New York State Constitution;
Defendants Brown Piscionere, Herring,
Fogarty, Giddens, Barry, Lowe and Bennett)

_____

289.   Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

290.   Plaintiff advances this claim against Defendants Brown, Piscionere, Herring, Fogarty, Giddens, Barry, Lowe and Bennett.

291.   As a result of the aforesaid conduct of Defendants Brown, Piscionere, Herring, Fogarty,

Giddens, Barry, Lowe and Bennett., the Plaintiff was deprived of rights guaranteed to him by the New York State Constitution, including though not limited to:

> A. The right of the people to be free from being deprived of life, liberty or property without due process as described in Article I § 6 of the New York State Constitution.

292.   The acts complained of were carried out by Defendants Brown, Piscionere, Herring, Fogarty, Giddens, Barry, Lowe and Bennett, in their capacities as Queens County District Attorney, Deputy Bureau Chief, Supervisor to Assistant District Attorneys, Assistant District Attorney, Major, Clerk to the County Queens Civil Court and Deputy Clerk with all of the actual and/or apparent authority attendant thereto, pursuant to the customs, usages, practices, procedures, and the rules of New York State, Defendant CITY, Unified Court System and Queens County District Attorney's Office.

293.   Defendants Brown, Piscionere, Herring, Fogarty, Giddens, Barry, Lowe and Bennett collectively and individually, while acting under color of state law violated Plaintiff's constitutional rights by engaging in conduct proscribed by the New York State Constitution.

294.   As a result of Defendants Brown, Piscionere, Herring, Fogarty, Giddens, Barry, Lowe and Bennett impermissible conduct, Plaintiff was injured and harmed. Accordingly, Plaintiff demands judgment against Defendants Brown, Piscionere, Herring, Fogarty, Giddens, Barry, Lowe and Bennett in a sum of money to be determined at trial.

## THIRTEENTH CAUSE OF ACTION

(Malicious Prosecution under State Law;
Richard Brown, Floyd Herring, Kevin Fogarty,
Taylor Piscionere, Maureen Giddens,
John Barry, Major Lowe,
Lieutenant O'Brien, Marie Bennett)

295.  Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

296.  Plaintiff advances this claim against Defendants Richard Brown, Floyd Herring, Kevin Fogarty, Taylor Piscionere, Maureen Giddens, John Barry, Major Lowe, Lieutenant O'Brien, and Marie Bennett.

297.  By virtue of the foregoing, Defendants Piscionere, Herring, Fogarty, Barry, Lowe, Bennett and Giddens, acting in concert with each other and with additional persons for whose acts they are liable, initiated, continued, and/or caused the initiation or continuation of, criminal proceedings against Plaintiff.

298.  The criminal proceedings "terminated" in Plaintiff's favor on July 24, 2014.

299.  There was no probable cause for the commencement or the continuation of the criminal proceedings.

300.  The Defendants acted with actual malice.

301.  Defendant City of New York is liable under the principle of respondeat superior.

302.  As a result of Defendants Richard Brown, Floyd Herring, Kevin Fogarty, Taylor Piscionere, Maureen Giddens, John Barry, Major Lowe, Lieutenant O'Brien, Marie Bennett impermissible conduct, Plaintiff was injured and harmed.

303.     Accordingly, Plaintiff demands judgment against Defendant City in a sum of money to be determined at trial.

## FOURTEENTH CAUSE OF ACTION

(Intentional Infliction of Emotional Distress
Under State Law; All Defendants)

304.     Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

305.     Defendants engaged in a continuous pattern of extreme and outrageous conduct directed at Plaintiff till present time.

306.     Defendants engaged in that pattern of conduct with an intention to cause, or in reckless disregard of the substantial probability that it would cause, Plaintiff severe emotional distress.

307.     Specifically, defendants, individually, in concert with, conspiring with, and/or aiding and abetting one another and other persons for whose acts they are liable, while acting in an investigative or administrative capacity, conspired with defendant Bennett, the complaining witness, into making false allegations,  and committing perjury in the accusatory instrument in order to file a superseding information to be used against Plaintiff, continuation of false and unfounded criminal charges against Plaintiff while lacking probable cause to do so and then unlawfully concealed exculpatory or impeachment evidence known as "Brady" material, and lied to or misled court and both Mr. Ward and Mr. Leibovitz in order to cover up their unlawful behavior and repeatedly and continually lied to and defrauded the court concerning the existence of evidence favorable to Plaintiff .

308.     Plaintiff suffered severe emotional distress as a result of, and that was proximately caused

by, the Defendants' aforementioned actions.

309.   Defendant City of New York is liable under the principle of respondeat superior.

310.   As a result of all Defendants impermissible conduct, Plaintiff was injured and harmed.

311.   Accordingly, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## FIFTEENTH CAUSE OF ACTION

(Negligent Hiring, Training and Supervision Under State Law;
Defendant City of New York)

---

312.   Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

313.   Defendant City was negligent in the hiring and retention of the Defendants Herring, Fogarty and Piscionere as follows:

> A.      Upon information and belief, Defendant City failed to use reasonable care in the hiring and retention of Defendants Herring, Fogarty and Piscionere, who conducted and participated in the acts of subjecting Plaintiff to malicious prosecution in violation of his constitutional rights and malicious abuse of process in the manners described herein.

> B.      Defendant City knew, or should have known in the exercise of reasonable care, the propensities of the aforesaid Defendants Herring, Fogarty and Piscionere to engage in the wrongful conduct heretofore alleged in this complaint.

65

314.   Defendant City was negligent in the training and supervision of Defendants Herring, Fogarty and Piscionere as follows:

A.   Defendant City knew or should have known that the requirements, guidelines, and terms of its training for the Defendants Herring, Fogarty and Piscionere were insufficient and inadequate to prevent the Defendants Herring, Fogarty and Piscionere from engaging in the wrongful conduct heretofore alleged in this complaint.

315.   Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

316.   Defendant City is also liable to Plaintiff on the basis of respondeat superior as a result of the constitutionally-impermissible actions of the Defendants Herring, Fogarty and Piscionere as described herein.

317.   As a result of Defendants Herring, Fogarty and Piscionere impermissible conduct, Plaintiff was injured and harmed. Accordingly, Plaintiff demands judgment against Defendant City in a sum of money to be determined at trial.

## SIXTEENTH CAUSE OF ACTION

### RESPONDEAT SUPERIOR under New York State Law
### (Defendant City)

318.   Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

66

319.    Plaintiff advances this claim against Defendant City.

320.    Defendants Herring, Fogarty and Piscionere acted in concert and conspired to use any means, no matter how unlawful and who committed the other wrongs against the Plaintiff described herein, whether named individual herein or not, were employees of Defendant City.

321.    At all relevant times, Defendants Herring, Fogarty and Piscionere were acting within the scope of their employment and on behalf of Defendant City.

322.    Defendant City is responsible for the torts of Defendants Herring, Fogarty and Piscionere and for the consequences of their actions generally, under the theory of respondeat superior.

323.    As a result of Defendants Herring, Fogarty and Piscionere's impermissible conduct, Plaintiff was injured and harmed. Accordingly, Plaintiff demands judgment against Defendant City in a sum of money to be determined at trial.

## SEVENTEENTH CAUSE OF ACTION

(Monell/ 42 U.S.C. § 1983 Claim Against Defendant
City Of New York For Actions of The QDAO)

324.    Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

## THE CITY OF NEW YORK POLICY AND PRACTICE

325.    At the time of Plaintiff's prosecution, and continuing until present time, District Attorney

Richard Brown, as the manager and chief administrator of the QDAO, a City agency, maintained a policy, custom and/or practice of deliberate indifference to violations by his employees of the constitutional rights of individuals who were investigated and criminally prosecuted in Queens County, including, but not limited to abuse of process, manufacturing of false evidence, conspiring with complaining witnesses, protecting "officers" who apply warrantless arrests, protect officers who commit perjury, Brady violations, failure to properly investigate ("the policy") .

326.    This policy began with his induction as District Attorney on June 1st, 1991 and has continued to this day.

327.    As Joel Rudin noted in his filing, in 70 known cases of prosecutorial mistakes and misbehavior in Queens over about a decade, the district attorney, Richard A. Brown, has disciplined just one lawyer. [6]

**Please See Exhibit H on the enclosed disc**

328.    The policy permits, encourages, or acquiesces in the commission of, constitutional violations of the rights of suspects and defendants by prosecutors and officers working with the QDAO, where arrest, pleas and convictions is most desired by the Office. The policy led directly to the violations of Plaintiff's constitutional rights during pre-trial and the subsequent cover-up of court officers and prosecutors' wrongdoing, which greatly prolonged Plaintiff's malicious prosecution.

329.    More specifically, it was the policy of BROWN to directly encourage, or be indifferent to and thereby indirectly encourage, prosecutors and officers working with them to abuse lawful process to maliciously prosecute defendants.

330.    At all times material to this complaint, defendant the City of New York acting through

---

[6]    https://s3.amazonaws.com/s3.documentcloud.org/documents/628687/2006-02feb-16-complaint-against-nyc.pdf?_ga=1.75711574.270313414.1427295060   pages 30-40

the Queens County District Attorney's Office, and through the individual defendants had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

331.   Defendant CITY directly caused the constitutional violations suffered by Plaintiff, and is liable for the damages suffered by Plaintiff as a result of the conduct of Defendants Brown, Herring, Fogarty and Piscionere. The conduct of Defendants Brown, Herring, Fogarty and Piscionere were a direct consequence of policies and practices of Defendant CITY.

332.   Despite its knowledge of such incidents of prior misconduct, Defendant CITY failed to take remedial action.

333.   As a result of the above described policies and customs, QDAO, including Defendants Brown, Herring, Fogarty and Piscionere believed that their actions would not be investigated or sanctioned, but would be tolerated.

334.   The wrongful policies, practices, customs and/or usages complained of herein, demonstrated a deliberate indifference on the part of policymakers of the CITY OF NEW YORK to the constitutional rights of person within the city, and were the direct and proximate cause of the violations of Plaintiff's rights alleged herein.

335.   As a result of Defendants Brown, Herring, Fogarty and Piscionere impermissible conduct, the Plaintiff was injured and harmed. Accordingly, the Plaintiff demands judgment against Defendant CITY in a sum of money to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court grant the following relief jointly and severally against Defendants:

## DECLARATORY RELIEF

A. Issue a declaratory judgment that Defendants Piscionere, Herring, Fogarty, Giddens, Barry, Lowe and Bennett's actions were a denial of Etan Leibovitz's Due Process rights under the 5th, 6th and 14th Amendment to the United States Constitution.

B. Issue a declaratory judgment that Defendants Piscionere, Herring, Fogarty, Giddens, Barry, Lowe and Bennett's actions were abuse of process and malicious prosecution, and deprivation of Etan Leibovitz's Liberty rights under the 4th, 5th, 6th and 14th Amendment to the United States Constitution.

## INJUNCTIVE RELIEF

A. Enjoin Defendants Brown and Herring and their successors, agents, servants, employees and all of those in active concert or participation with them from subjecting defendants to unlawful criminal prosecution and constitutional due process violations.

B. Retain jurisdiction of this case until Defendants have fully complied with the orders of the Court, the unlawful conditions, practices, policies, acts, and omissions complained of herein, no longer exist and this court is satisfied that they will not recur.

70

## DEMAND FOR MONETARY DAMAGES

C.  Award Plaintiff compensatory damages in the amount of $2,500,000;

D.  Award Punitive damages against the individual defendants in an amount
    $18,000,000  based on the wanton, willful and gross misconduct of the
    defendants to deter similar conduct;

E.  Plaintiff demands a jury trial with respect to all claims which may be so tried.

F.  Award Plaintiff reasonable pro se fees and costs under 42. U.S.C.§ 1988.

G.  Award such other and further relief as the Court deems just and proper.

Dated:  Queens, New York
        March 30th, 2015

_____

Etan Leibovitz
Pro Se
83-19 141st #207
Briarwood, NY 11435
(718) 805-1941

71

**Statement of Verification**

Etan Leibovitz, being duly sworn deposes and says:

I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

Plaintiff

Sworn to before me this

30th day of March, 2015

NOTARY PUBLIC

PATRICIA E. LASAK
Notary Public, State of New York
No. 04LA6232541
Qualified in Queens County
Commission Expires December 13, 20 18

72