```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ETAN LEIBOVITZ,

                Plaintiff,                **MEMORANDUM & ORDER**

     - against -                          15-CV-1722 (KAM)

THE CITY OF NEW YORK, a Municipal
Entity; QUEENS COUNTY DISTRICT
ATTORNEY RICHARD BROWN; DEPUTY BUREAU
CHIEF FLOYD HERRING; SUPERVISORY
ASSISTANT DISTRICT ATTORNEY KEVIN
FOGARTY; ASSISTANT DISTRICT ATTORNEY
TAYLOR PISCIONERE; CLERK OF THE
COUNTY QUEENS CIVIL COURT MAUREEN
GIDDENS; DEPUTY CLERK JOHN BARRY;
MAJOR LOWE; LIEUTENANT O'BRIEN;
COURT OFFICERS MARIE BENNETT; JOHN
DOE SHIELD #6814; JOHN DOE SHIELD
#3814; JOHN DOE SHIELD #7910; JOHN
DOE SHIELD #687; JOHN DOES #1-16,

                Defendants.
----------------------------------X
```
**MATSUMOTO, United States District Judge:**

Plaintiff Etan Leibovitz, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 and New York state law for, *inter alia*, false arrest, failure to intervene, malicious prosecution, and violation of his First Amendment rights. (*See* ECF No. 1, Complaint dated 3/30/15.) Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 is granted. For the reasons discussed below, plaintiff's claims against the City of New York, Clerk of the Queens County Civil Court Maureen Giddens ("Giddens"), Queens County District Attorney Richard Brown ("Brown"), Deputy Bureau Chief Floyd

Herring ("Herring"), Supervisory Assistant District Attorney Kevin Fogarty ("Fogarty"), and Assistant District Attorney Taylor Piscionere ("Piscionere") are dismissed. Plaintiff's claims against Deputy Clerk John Barry ("Barry"), Major Lowe ("Lowe"), Court Officer Marie Bennett ("Bennett"), Lieutenant O'Brien ("O'Brien"), Court Officers John Doe Shield #6814, John Doe Shield #3814, John Doe Shield #7910, John Doe Shield #687, and John Does #1-16 ("John Doe Officers") shall proceed.

## BACKGROUND

As alleged in the complaint, on April 16, 2014, plaintiff Etan Leibovitz was arrested inside the Queens County Civil Court for, *inter alia*, video-recording court officers with a smartphone recording device after being told that recording was not allowed. (Compl. at 13-20.) At the time of his arrest, plaintiff was at the Queens Civil Court to observe a hearing involving his friend, Kenneth Ward, Jr. ("Ward"). (*Id.* at 13.) While at the hearing, plaintiff and Ward were directed by Bennett to allow the female respondent in Ward's case to leave the courtroom before they exited. (*Id.* at 14.) Plaintiff verbally objected to Bennett's direction because he felt that it constituted gender-based discrimination. (*Id.*) Plaintiff was permitted to leave the courtroom several minutes later and was followed by Bennett on his walk toward the elevators. (*Id.*) After exiting the courtroom, plaintiff began to feel anxious and

2

advised Bennett that he was going to record her with his smartphone in order to "protect Mr. Ward and himself." (*Id.*) Bennett subsequently called for assistance from other court officers, and O'Brien and the John Doe Officers responded to the elevators. (*Id.* at 15.) Plaintiff was still recording the scene using his smartphone. (*Id.*) Bennett and O'Brien directed plaintiff to go downstairs to the third floor. (*Id.*) Plaintiff refused to leave the area, where other witnesses were present. (*Id.*) Bennett then told plaintiff that he could not "record in court." (*Id.*) Plaintiff objected to this direction, asked Bennett and other defendants to provide authority for her statement that plaintiff could not record inside the courthouse, and indicated verbally that he intended to record Bennett, O'Brien and the John Doe Officers to protect Ward's due process and civil rights. (*Id.* at 16.) John Doe Shield #6814 informed plaintiff that there was an administrative rule prohibiting recordings in the courthouse. (*Id.*) Plaintiff expressed an intent to confirm the rule's existence by searching the internet on his smartphone. (*Id.*)

Bennett reiterated to plaintiff that she wanted him to go to the third floor. (*Id.* at 17.) After some time had passed and more people had gathered, plaintiff and Ward ultimately proceeded to the third floor with Bennett, O'Brien and the John Doe Officers, at which point Bennett directed plaintiff to sit

3

on a bench.  (*Id.*)  John Doe #1 instructed Ward to leave, but Ward sat down next to plaintiff on the bench and refused to leave.  (*Id.* at 17-18.)  John Does #1-4 then went into another office, while Bennett, O'Brien, John Does Shield #3814, Shield #7910, #5, and #6 supervised plaintiff and Ward.  (*Id.* at 18.)

Soon after, Lowe emerged from the office and ordered O'Brien to "[g]ive [plaintiff] an order and then arrest him . . . ."  (*Id.*)  Meanwhile, O'Brien told Ward that he could leave.  (*Id.*)  Plaintiff told defendants that he would erase the video from his phone, then "stood up and was about to start recording when . . . Lowe grabbed his phone from behind and took the phone out from his right hand" before heading back into the office.  (*Id.*)  Thereafter, Ward was arrested by John Doe Shield #7910, and plaintiff was arrested by Bennett.  (*Id.* at 18-19.)  Plaintiff states that Bennett went into the office for a few minutes and "on information and belief [Bennett] was advised by . . . Lowe to arrest [plaintiff]."  (*Id.* at 19.)  After being placed in custody, plaintiff was transported to the 103rd Precinct, where he was fingerprinted, photographed, and allegedly denied the opportunity to make a phone call.  (*Id.* at 19-20.)  Several hours later, plaintiff was transported to Queens Central Booking, where he was placed in a holding cell with several other individuals.  (*Id.* at 20.)

Plaintiff was arraigned on April 16, 2014 and

4

transferred to Rikers Island later that night, around midnight. (*Id.* at 21-23.) He was released from custody later that day (that is, on April 17, 2014) after bail had been posted by a friend of plaintiff's. (*Id.* at 21-24.) A criminal complaint, sworn by Bennett, was filed against plaintiff charging him with violating N.Y. Penal Law § 195.05, Obstructing Governmental Administration in the Second Degree. (*Id.* at 25.)

Plaintiff's next court appearance in his criminal case was on April 21, 2014, at which time his request to proceed *pro se* was granted. (*Id.* at 26.) Plaintiff was advised by the chief clerk of Q-IDV that, as a result of his arrest, signs had been erected in the Queens Courts indicating that the use of audio/video recording devices were prohibited in the courthouse unless authorized by the Supervising Judge. (*Id.*)

On April 29, 2014, May 6, 2014, June 6, 2014, June 13, 2014, June 20, 2014 and July 7, 2014, plaintiff arrived at the Queens Civil Court and his cell phone was confiscated and vouchered by a court officer and returned to him upon his departure from the courthouse. (*Id.* at 26-27, 29-30.) On June 4, 2014 and July 8, 2014, Assistant District Attorney Piscionere advised plaintiff by phone that the case him would be dismissed for lack of evidence. (*Id.* at 28.)

On June 20, 2014, plaintiff confronted Barry about the continued confiscation of his cell phone upon entering the

5

courthouse and was advised that it was court policy to do so. (*Id.* at 29.) Plaintiff returned to the courthouse on July 7, 2014 to further discuss the cell phone confiscation policy with Barry, but because Barry was not available, plaintiff went to Lowe's office where he proceeded to confront and argue with Lowe. (*Id.* at 30-31.) Following this confrontation, plaintiff exited Lowe's office and another verbal confrontation occurred between plaintiff, Lowe, John Doe Shield # 687, John Doe Shield # 16 and John Doe Shield # 6814, during which Lowe threatened to arrest plaintiff again. (*Id.* at 31-33.)

Following this incident, plaintiff advised Piscionere that he was harassed by Lowe, John Doe Shield # 687, John Doe Shield # 16 and John Doe Shield # 6814. (*Id.* at 33.) He requested an investigation which Piscionere refused. (*Id.*) On July 8, 2014, plaintiff also wrote to Barry requesting an investigation of Lowe. (*Id.*) Barry later informed plaintiff that Queens Civil Court no longer has operable surveillance cameras but did not respond to plaintiff's request to investigate Lowe. (*Id.*) When he did not receive a response from Barry, plaintiff called Court Clerk Giddens to advise her of the circumstances surrounding his April 16, 2014 arrest and the incident on July 7, 2014, and expressed his intent to hold her accountable. (*Id.* at 34.)

On July 24, 2014, while in court, Piscionere offered a

dismissal of the criminal complaint against plaintiff provided his co-defendant "Mr. Ward [took] an ACD" and/or plaintiff withdrew his pending motions. (*Id.* at 34.) After plaintiff declined the offers, Piscionere advised the court that a superseding information would be filed against plaintiff and Ward adding two counts of disorderly conduct. (*Id.*) The basis of the superseding information was the sworn statement of Bennett regarding the incident that occurred on April 16, 2014. (*Id.* at 37-38.)

On November 17, 2014, Fogarty, now also prosecuting the case for the Queens District Attorney's Office, appeared in court with Herring and stated that they had dismissed the top count of Obstructing Governmental Administration in the Second Degree against plaintiff and Ward. (*Id.* at 40.) Plaintiff and Ward were offered a deal to resolve the case against them if they agreed to take an adjournment in contemplation of dismissal (ACD) on the two lesser charges of disorderly conduct, which they both declined. (*Id.*) The case remains pending before the Queens Criminal Court. (*Id.* at 42-46.) *See also* https://iapps.courts.state.ny.us/webcrim (plaintiff identified by name) (last visited 6/30/15). Plaintiff seeks money damages and declaratory and injunctive relief. (*Id.* at 47-71.)

## STANDARD OF REVIEW

*Pro se* complaints are held to less stringent standards

than pleadings drafted by attorneys, and the court is required to read the plaintiff's *pro se* complaint liberally and interpret it as raising the strongest arguments it suggests. *Erickson v. Pardus*, 551 U.S. 89 (2007); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191-93 (2d Cir. 2008).

Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009)). A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)

**DISCUSSION**

In order to maintain a § 1983 action, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir.1994) (citation omitted). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id.* Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).

**I.   Claims Against Giddens and Brown**

Although plaintiff names Queens County Civil Court Clerk Maureen Giddens and Queens County District Attorney Richard Brown as defendants, he does not sufficiently allege that they were personally involved in the alleged deprivation of plaintiff's civil rights. Plaintiff must demonstrate each defendant's direct or personal involvement in the actions which are alleged to have caused the deprivation of plaintiff's constitutional rights. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1991); *Holmes v. Kelly*, No. 13 CV 3122, 2014 WL 3725844, at *2

(E.D.N.Y. July 25, 2014); *Kneitel v. Hynes*, No. 11 CV 2883, 2011 WL 2747668, at *2 (E.D.N.Y. July 13, 2011). Plaintiff must also "allege a tangible connection between the acts of the defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

In addition, liability under § 1983 generally cannot be imposed on a supervisor solely based on his position because there is no *respondeat superior* or vicarious liability under § 1983. *See*, *e.g.*, *Iqbal*, 556 U.S. 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003); *King v. Warden*, No. 13 CV 5307, 2013 WL 5652756, at *2 (E.D.N.Y. Oct. 11, 2013); *Papadopoulos v. Amaker*, No. 12 CV 3608, 2013 WL 3226757, at *3 (E.D.N.Y. June 25, 2013). Here, plaintiff fails to allege any facts to support a claim that Queens County Civil Court Clerk Maureen Giddens or Queens County District Attorney Richard Brown are responsible for any alleged deprivation of plaintiff's civil rights to state a claim for liability under § 1983. As to Ms. Giddens, plaintiff makes only conclusory allegations that she was involved in the violation of plaintiff's constitutional rights. (*See* Compl. at 52-53, 60-63.) Similarly, plaintiff allegations that Mr. Brown's "overall

deliberate indifference" was a substantial cause of alleged prosecutorial misconduct is insufficient to allege his personal involvement in the deprivation of plaintiff's constitutional rights. Therefore, all claims against Maureen Giddens and Richard Brown are dismissed.

**II. Claims Against Herring, Fogarty, and Piscionere**

Plaintiff's claims against Queens County District Attorney Office Deputy Bureau Chief Floyd Herring, Supervisory Assistant District Attorney Kevin Fogarty and Assistant District Attorney Taylor Piscionere are dismissed as it is "well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York,* 424 F.3d 231, 236 (2d Cir. 2005) (internal quotations omitted). "Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citations omitted). Absolute immunity for prosecutorial acts can be defeated only if the prosecutor is alleged to have acted in the complete absence of jurisdiction, which is not the case here. *Shmueli*, 424 F.3d at 237; *see also Buckley v. Fitzsimmons,* 509 U.S. 259, 274 n. 5 (1993) (acknowledging that

absolute immunity shields "prosecutor's decision to bring an indictment, whether he has probable cause or not"); *Norton v. Town of Islip*, No. 12 CV 4463, --- F.Supp.3d ---, 2015 WL 1509505, at *21, n. 7 (E.D.N.Y. Mar. 31, 2015) ("speculation of a retaliatory motive is insufficient to defeat a claim of absolute immunity; indeed, the very concept of immunity is that the Court does not inquire into the motivations that may be at play.") (internal citations omitted). Plaintiff's claims against Herring, Fogarty and Piscionere for injunctive and declaratory relief are likewise dismissed. *See Murdock v. Legal Aid Society*, No. 14 CV 508, 2015 WL 94245, at *4 (E.D.N.Y. Jan. 6, 2015).

### III. Claims Against the City of New York

To state a claim for relief under § 1983 against a municipal defendant, such as the City of New York, a plaintiff must show the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978); *see also Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) ("[T]o establish municipal liability under § 1983, a plaintiff must prove that action pursuant to official municipal policy caused the alleged constitutional injury." (internal quotation marks and citation

omitted)). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Turtle*, 471 U.S. 808, 823 (1985). In addition, "[i]t is well established that 'local governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employees' actions.'" *Sam v. City of New York*, No. 14 CV 3253, 2014 WL 6682152, at *2 (E.D.N.Y. Nov. 24, 2014) (quoting *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011)) (internal quotation marks and citations omitted).

Here, plaintiff alleges that the "City was negligent in the hiring and retention of the Defendants Herring, Fogarty and Piscionere . . . ." (*Id*. at 65.) Plaintiff further alleges that:

> Richard Brown, as the manager and chief administrator of the [Queens District Attorney's Office], a City agency, maintained a policy, custom and/or practice of deliberate indifference to violations by . . . employees of the constitutional rights of individuals who were investigated and criminally prosecuted in Queens County, including, but not limited to abuse of process, manufacturing of false evidence, conspiring with complaining witnesses, protecting 'officers' who apply warrantless arrest, protect officers who commit perjury, Brady violations, [and] failure to properly investigate ("the policy").

(*Id.* at 68.) Plaintiff further argues that "it was the policy

13

of Brown to directly encourage, or be indifferent to and thereby indirectly encourage, prosecutors and officers working with them to abuse lawful process to maliciously prosecute defendants." (*Id.* )

Plaintiff's allegations here are wholly conclusory and fail to state a claim for municipal liability. *See Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) (a mere assertion of a custom or policy is not sufficient to sustain a § 1983 claim against a municipal defendant in the absence of any allegations of fact); *Milo v. City of New York*, -- F.Supp.3d -- 2014 WL 5933091, at *10 (E.D.N.Y. Nov. 14, 2014) ("generalized allegations that the City adopted an official policy or custom that deprived plaintiff of her constitutional rights are insufficient to state a *Monell* claim."). Thus, plaintiff's claims against the City of New York are dismissed.

## CONCLUSION

Accordingly, all claims against the City of New York, Queens County Civil Court Clerk Maureen Giddens, Queens County District Attorney Richard Brown, Deputy Bureau Chief Floyd Herring, Supervisory Assistant District Attorney Kevin Fogarty and Assistant District Attorney Taylor Piscionere are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). No summonses shall issue as to these defendants. The Clerk of Court is directed to amend the caption and docket to reflect the

14

dismissal of these defendants.  Plaintiff's claims shall proceed against Deputy Clerk John Barry, Major Lowe, Court Officer Marie Bennett, Lieutenant O'Brien, Court Officers John Doe Shield #6814, John Doe Shield #3814, John Doe Shield #7910, John Doe Shield #687 and John Does #1-16.

The United States Marshal Service is directed to serve the summons, complaint, and this order upon the remaining defendants without prepayment of fees.  A courtesy copy of the same papers shall be mailed to the Attorney General for the State of New York.  All pretrial matters are referred to Magistrate Judge Lois Bloom.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.  *Coppedge v. United States*, 269 U.S. 438, 444-45 (1962).

**SO ORDERED.**

**Dated**:  Brooklyn, New York
June 30, 2015

_____/s/_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York