UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X

ETAN LEIBOVITZ,

              Plaintiff,             **MEMORANDUM & ORDER**

   - against –              15-CV-1722 (KAM)

DEPUTY CLERK JOHN BARRY; MAJOR LOWE;
LIEUTENANT O'BRIEN;
COURT OFFICERS MARIE BENNETT; JOHN
DOE SHIELD #6814; JOHN DOE SHIELD
#3814; JOHN DOE SHIELD #7910; JOHN
DOE SHIELD #687; JOHN DOES #1-16,

              Defendants.

--------------------------------X

**MATSUMOTO, United States District Judge:**

       Plaintiff Etan Leibovitz, proceeding *pro se*, commenced
this civil rights action pursuant to 42 U.S.C. § 1983 and New
York state law for, *inter alia*, false arrest, malicious
prosecution, failure to intervene, and violations of his First
Amendment rights. (*See* ECF No. 1, Complaint dated 3/30/15.)
Defendants Deputy Clerk John Barry, Major Glen Lowe, Lieutenant
Dawn O'Brien, and Court Officer Marie Bennett (collectively, the
"State Defendants")[1] have filed a motion to dismiss all claims
against them for lack of subject matter jurisdiction pursuant to
Rule 12(b)(1) and for failure to state a claim pursuant to Rule
12(b)(6). (ECF No. 30, Motion to Dismiss dated 2/8/2016.)

---

[1] Plaintiff alleges that each State Defendant was "acting in the capacity as
agent, servant, and employee of the New York State." (Compl. at 9.)

After the court granted plaintiff several extensions of time to respond to the motion to dismiss (*see* Orders dated 11/19/2015, 1/5/2016), plaintiff informed defense counsel that he would not oppose the motion.  (ECF No. 27, Letter dated 2/4/2016.)  For the reasons set forth below, the State Defendants' motion to dismiss is granted.

## Factual Background

As alleged in the Complaint, on April 16, 2014, plaintiff was arrested inside the Queens County Civil Court for, *inter alia*, video recording court officers with a smartphone recording device after being told that recording in the courthouse was not allowed, and refusing officers' orders to disperse.  (Compl. at 13-20.)[2]  At the time of his arrest, plaintiff was at the Queens Civil Court to observe a hearing involving his friend, Kenneth Ward, Jr. ("Ward").  (*Id.* at 13.)

While at the hearing, plaintiff and Ward were directed by New York State Court Officer Marie Bennett ("Officer Bennett") to allow the female respondent in Ward's case to leave the courtroom before plaintiff and Ward exited.  (*Id.* at 14.)  Plaintiff verbally objected to Officer Bennett's direction because he felt that it constituted gender-based discrimination.  (*Id.*)  Plaintiff was permitted to leave the courtroom several

---

[2] Citations to the Complaint refer to page numbers, not numbered paragraphs.

minutes later and was followed by Officer Bennett as he walked toward the elevators.  (*Id.*)

After exiting the courtroom, plaintiff began to feel anxious and advised Officer Bennett that he was going to record her with his smartphone in order to "protect Mr. Ward and himself."  (*Id.*)  Officer Bennett subsequently called for assistance from other court officers.  (*Id.* at 15.)  Lieutenant Dawn O'Brien ("Lieutenant O'Brien") and court officers identified in the Complaint as John Doe Shield #6814, John Doe Shield #3814, John Doe Shield #7910, John Doe Shield #687, and John Does #1-16 (collectively, "John Doe Officers") responded to the fourth floor.  (*Id.*)  Plaintiff continued recording the scene using his smartphone.  (*Id.*)  Officer Bennett and Lieutenant O'Brien directed plaintiff to go downstairs to the third floor.  (*Id.*)  Plaintiff refused to leave the area near the elevators, where members of the public were present as "witnesses to observe our actions and reactions."  (*Id.*)

Officer Bennett then told plaintiff that he could not "record in court."  (*Id.*)  Plaintiff, alleging that he was "a little puzzled and confused" by Officer Bennett's directive, objected to this direction, and asked Bennett and other defendants to provide legal authority for Bennett's statement that plaintiff could not record inside the courthouse.  (*Id.* at 15-16.)  Plaintiff then indicated verbally that he intended to

record Bennett, O'Brien and the John Doe Officers to protect
Ward's "civil rights and due process." (*Id.* at 16.)  John Doe
Shield #6814 informed plaintiff that there was an administrative
rule prohibiting recordings in the courthouse. (*Id.*)  Plaintiff
expressed his intent to confirm the rule's existence by
searching the internet on his smartphone. (*Id.*)

Officer Bennett again instructed plaintiff to go
downstairs to the third floor. (*Id.* at 17.)  After a few
minutes passed and plaintiff was "confident there were enough
onlookers and bystanders who observed what transpired,"
plaintiff and Ward ultimately proceeded to the third floor with
Bennett, O'Brien, and the John Doe Officers. (*Id.*)  Officer
Bennett then directed plaintiff to sit on a bench. (*Id.*)  John
Doe #1 instructed Ward to leave, but Ward sat down next to
plaintiff on the bench and refused to leave. (*Id.* at 17-18.)
John Does #1-4 then went into another office, while Bennett,
O'Brien, John Does Shield #3814, Shield #7910, #5, and #6
supervised plaintiff and Ward. (*Id.* at 18.)

Soon after, Major Glen Lowe ("Major Lowe") emerged
from the office and ordered Lieutenant O'Brien to "[g]ive [Ward]
an order and then arrest him . . . ." (*Id.*)  O'Brien told Ward
that he could leave. (*Id.*)  Plaintiff told defendants that he
would erase the video from his phone, then "stood up and was
about to start recording again when Defendant Lowe grabbed his

4

phone from behind and took the phone out from his right hand"
before heading back into the office.  (*Id.*)  Thereafter, John
Doe Shield #7910 arrested Ward, and Bennett arrested plaintiff.
(*Id.* at 18-19.)  Plaintiff states that Officer Bennett went into
the office for a few minutes and "on information and belief
[Bennett] was advised by . . . Lowe to arrest [plaintiff]."
(*Id.* at 19.)  After being placed in custody, plaintiff was
transported to the 103rd Precinct, where he was fingerprinted,
photographed, and allegedly denied the opportunity to make a
phone call.  (*Id.* at 19-20.)  Several hours later, plaintiff was
transported to Queens Central Booking, where he was placed in a
holding cell with several other individuals.  (*Id.* at 20.)

Plaintiff was arraigned on April 16, 2014 and
transferred to Rikers Island later that night, around midnight.
(*Id.* at 21-23.)  He was released from custody later that day
(that is, on April 17, 2014) after a friend of plaintiff's
posted bail.  (*Id.* at 21-24.)  A criminal complaint, sworn by
Officer Bennett, charged plaintiff with violating New York Penal
Law § 195.05, obstructing governmental administration in the
second degree.  (*Id.* at 25.)

Plaintiff's next court appearance in his criminal case
took place on April 21, 2014, at which time his request to
proceed *pro se* was granted.  (*Id.* at 26.)  A court clerk advised
plaintiff that, as a result of his arrest, signs had been

erected in the Queens Courts indicating that the use of audio/video recording devices was prohibited in the courthouse unless authorized by the Supervising Judge. (*Id.*)

On April 29, 2014, May 6, 2014, June 6, 2014, June 13, 2014, June 20, 2014 and July 7, 2014, plaintiff arrived at the Queens Civil Court, where his cell phone was confiscated and vouchered by a court officer and returned to him upon his departure from the courthouse. (*Id.* at 26-27, 29-30.) On June 4, 2014 and July 8, 2014, Assistant District Attorney Taylor Piscionere advised plaintiff by phone that the case against him would be dismissed for lack of evidence. (*Id.* at 28.)

On June 20, 2014, plaintiff confronted Deputy Clerk John Barry ("Deputy Clerk Barry") about the continued confiscation of his cell phone upon entering the courthouse. Deputy Clerk Barry advised that it was court policy to do so. (*Id.* at 29.) Plaintiff returned to the courthouse on July 7, 2014 to further discuss the cell phone confiscation policy with Deputy Clerk Barry, but because Barry was not available, plaintiff went to Major Lowe's office where he confronted and argued with Lowe about his April 16th arrest, and threated to sue Lowe in federal court. (*Id.* at 30-31.) Following this confrontation, plaintiff exited Lowe's office and another verbal confrontation ensued between plaintiff and Lowe, John Doe Shield # 687, John Doe Shield # 16, and John Doe Shield # 6814, during

which Lowe threatened to arrest plaintiff again. (*Id.* at 31-33.) Plaintiff then returned to the first floor of the courthouse, where he "yelled out loud" for Lowe to meet him there during a three to four minute "outburst," then left the courthouse. (*Id.* at 32-33.)

Following this incident, plaintiff advised Assistant District Attorney Piscionere that on July 7, 2014 he had been harassed by Major Lowe, John Doe Shield # 687, John Doe Shield # 16 and John Doe Shield # 6814. (*Id.* at 33.) He requested an investigation, which Piscionere declined to initiate. (*Id.*) On July 8, 2014, plaintiff also wrote to Deputy Clerk Barry requesting an investigation of Major Lowe. (*Id.*) Barry later informed plaintiff that Queens Civil Court no longer had operable surveillance cameras, but did not respond to plaintiff's request to investigate Lowe. (*Id.*) When plaintiff did not receive a response from Barry, he called Queens County Civil Court Clerk Maureen Giddens to advise her of the circumstances surrounding his April 16, 2014 arrest, the incident on July 7, 2014, and expressed his intent to "make her accountable," and further informed her that he had recorded their conversation. (*Id.* at 34.)

On July 24, 2014, plaintiff appeared in Queens Criminal Court expecting that his own case would be dismissed based on Assistant District Attorney Piscionere's statement that

she lacked sufficient evidence to proceed. (*Id.* at 34.) While in court, Assistant District Attorney Piscionere offered plaintiff a dismissal of the criminal complaint provided that his co-defendant, Mr. Ward, pleaded guilty to obstructing governmental administration. (*Id*. at 35.) After plaintiff declined the offer, Piscionere advised the court that the government would be filing a superseding information against plaintiff and Ward, adding two counts of disorderly conduct. (*Id.*) The basis of the superseding information was the sworn statement of Officer Bennett regarding the incident that occurred on April 16, 2014. (*Id*. at 37-38.)

On September 19, 2014, the prosecution filed the superseding information charging plaintiff with two counts of disorderly conduct pursuant to New York Penal Law §§ 240.20(2) and (6), in addition to the preexisting charge for obstructing governmental administration in the second degree pursuant to § 195.05. (*Id*. at 37-38.)

On November 17, 2014, Assistant District Attorney Kevin Fogarty, now also prosecuting the case for the Queens District Attorney's Office, appeared in court with Deputy Bureau Chief Floyd Herring and stated that the prosecutor had dismissed the count of obstructing governmental administration in the second degree against plaintiff and Ward, leaving only the two counts of disorderly conduct. (*Id*. at 40.) Plaintiff and Ward

were offered a deal to resolve the case against them if they agreed to take an adjournment in contemplation of dismissal (ACD) on the two lesser charges of disorderly conduct. They both declined. (*Id.*)

On May 8, 11, and 12, 2015, the Honorable Michelle Armstrong held a bench trial in Criminal Court, Queens County. (*See* Declaration of Angel M. Guardiola ("Guardiola Decl.") dated 10/26/2015, Ex. A at 4-5.)[3] On June 10, 2015, plaintiff was found guilty of one count of disorderly conduct pursuant to New York Penal Law § 240.20(2) for making unreasonable noise. (*Id.* at 5; Guardiola Decl., Ex. B.)[4] Plaintiff filed an appeal of his conviction with the Supreme Court of New York, Appellate Term, which remains pending. (*See* ECF No. 33, Letter from Plaintiff dated 2/11/2016; *see also State of New York v. Etan Leibovitz*, No. 2016-187Q, Slip Op. No. 2016-84372(U) (Order granting stay of execution of judgment pending appeal), *available at*:

---

[3] In considering a Rule 12(b)(6) motion to dismiss, a court is generally restricted to reviewing only the allegations in the complaint. However, it is "well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)," *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998), and may take judicial notice of documents filed in other courts, *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Accordingly, the court takes judicial notice of the public records attached as exhibits to defendants' motion to dismiss. The records provide a procedural history of the underlying criminal proceedings that plaintiff references throughout the Complaint. (*See* Guardiola Decl., Ex. A (Record of Court Action); Ex. B (Record of Plaintiff's Appearances).)

[4] The Complaint incorrectly states that all charges against plaintiff were dismissed. (Compl. at 47.) The documents annexed to the State Defendants' motion, which are properly considered, establish that plaintiff was convicted on one count of disorderly conduct.

http://www.nycourts.gov/reporter/motions/2016/2016 84372.htm
(last visited 9/20/2016).)

**Procedural History**

Plaintiff filed this action on March 30, 2015. (ECF No. 1, Complaint.) On June 30, 2015, the court granted plaintiff permission to proceed *in forma pauperis*, but dismissed, *sua sponte*, plaintiff's claims against the City of New York, Clerk of the Queens County Civil Court Maureen Giddens, Queens County District Attorney Richard Brown, Deputy Bureau Chief Herring, Supervisory Assistant District Attorney Fogarty, and Assistant District Attorney Piscionere pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim. (ECF No. 4, Order dated 6/30/2015.) The court permitted plaintiff's claims to proceed against Deputy Clerk John Barry, Major Lowe, Court Officer Marie Bennett, Lieutenant O'Brien, and the John Doe Officers. (*Id.*) The case caption was amended accordingly.

As the court can best discern, the Complaint includes the following federal causes of action against the remaining defendants, each asserted pursuant to 42 U.S.C. § 1983: (1) deprivation of plaintiff's First Amendment rights to free speech and free expression against Lowe and Barry; (2) illegal seizure in violation of the Fourth Amendment against Barry and Lowe; (3) false arrest and false imprisonment in violation of the Fourth Amendment against Major Lowe and Officer Bennett; (4) malicious

prosecution and abuse of process against Barry, Lowe, and

Bennett in violation of the Fourth, Fifth, Sixth, and Fourteenth

Amendments; and (5) failure to intervene against O'Brien, Barry,

and the John Doe Officers in violation of the Fourth and

Fourteen Amendments.  The Complaint also asserts at least ten

state common law causes of action against defendants, including

false imprisonment, assault, battery, and abuse of process.[5]

Plaintiff seeks compensatory and punitive damages, a declaratory

judgment that plaintiff's rights were violated, and injunctive

relief "enjoin[ing] Defendants Brown and Herring and their

successors, agents, servants, employees . . . from subjecting

defendants [sic] to unlawful criminal prosecution and

constitutional due process violations."  (Compl. 70-71.)[6]

On September 16, 2015, during a pre-motion conference

with the parties, the court granted plaintiff leave to file an

amended complaint no later than October 12, 2015.  (*See* Minute

Entry dated 9/16/2015.)  Plaintiff did not file an amended

complaint by the court's deadline, or anytime thereafter.  On

October 25, 2015, the State Defendants served their motion to

dismiss the Complaint.  Although plaintiff requested and

---

[5] As discussed *infra*, because plaintiff's federal claims are subject to dismissal, the court declines to exercise supplemental jurisdiction over plaintiff's state law claims not addressed herein.

[6] The court dismissed plaintiff's claims against Queens County District Attorney Brown and Queens County District Attorney Office Deputy Floyd Herring on June 30, 2015.  (ECF No. 4.)

received from the court multiple extensions of time to serve his opposition to the motion to dismiss (*see* Orders dated 11/19/2015, 1/5/2016), plaintiff ultimately informed defendants' counsel on January 28, 2016 that he would not oppose defendants' motion. (ECF No. 27, Letter dated 2/4/2016.) Accordingly, on February 8, 2016, defendants filed their unopposed motion to dismiss all claims and a supporting memorandum. (*See* ECF No. 30, Defendant's Memorandum in Support of Motion for Summary Judgment ("Def. Mem.").)

The State Defendants seek dismissal of all claims brought against them in their official capacities pursuant to Rule 12(b)(1), arguing that they are protected by sovereign immunity. They also argue the Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## Legal Standards

**I.    Rule 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). It is well-settled that the "plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426

F.3d 635, 638 (2d Cir. 2005) (citing *Luckett v. Bure,* 290 F.3d 493, 497 (2d Cir. 2002)).  In reviewing a Rule 12(b)(1) motion to dismiss, the court "must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff."  *J.S. ex rel. N.S. v. Attica Cent. Sch.,* 386 F.3d 107, 110 (2d Cir. 2004).  The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits."  *Id.*

## II.  Rule 12(b)(6)

"To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  A complaint providing only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

Courts are "obligated to construe a *pro se* complaint

13

liberally" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) and

must interpret *pro se* complaints "to raise the strongest

arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241,

248 (2d Cir. 2006). Nonetheless, *pro se* "complaints must

contain sufficient factual allegations to meet the plausibility

standard." *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir.

2012).

## Discussion

### I. Sovereign Immunity

Plaintiff brings each of his claims against the State

Defendants in their official and personal capacities. The State

Defendants argue that sovereign immunity bars plaintiff's claims

against them in their official capacities.

The Eleventh Amendment provides that "[t]he Judicial

power of the United States shall not be construed to extend to

any suit in law or equity, commenced or prosecuted against one

of the United States by Citizens of another State, or by

Citizens or Subjects of any Foreign State." U.S. Const. amend.

XI. In interpreting the Eleventh Amendment, the Supreme Court

has long held that the Eleventh Amendment bars suits against a

state by one of its own citizens. *See Hans v. Louisiana,* 134

U.S. 1, 10-11 (1890). Sovereign immunity under the Eleventh

Amendment also extends to state officials sued in their official

capacities because the state is the true party at interest. *See*

*Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

As officers of the New York State Court System, the State Defendants are immune from suit in their official capacities. *See Davis v. New York,* 106 Fed. App'x. 82, 83 (2d Cir. 2004) ("Specifically, we affirm the district court's holding that the Eleventh Amendment bars [plaintiff's] claims against the State of New York, the New York State Unified Court System, and [individual defendants] in their official capacities.") A claim that is barred by a state's sovereign immunity must be dismissed. *See Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54 (1996).

There are three limited exceptions to state sovereign immunity, all inapplicable here. First, a state may waive its sovereign immunity by consenting to suit in federal court. *Coll. Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670 (1999). Second, Congress may abrogate state sovereign immunity by acting pursuant to a grant of constitutional authority. *Kimel v. Fl. Bd. of Regents,* 528 U.S. 62, 80 (2000)). Third, under the *Ex parte Young* doctrine, sovereign immunity does not preclude a plaintiff from seeking prospective injunctive relief or declaratory relief against a state official acting in his or her official capacity for ongoing violations of federal law. *See Green v. Mansour*, 474 U.S. 64, 68, (1985) ("[T]he Eleventh Amendment does not prevent

federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law."); *Dube v. State Univ. of New York,* 900 F.2d 587, 595 (2d Cir. 1990) ("[A] state official acting in his official capacity may be sued in a federal forum to enjoin conduct that violates the federal Constitution, notwithstanding the Eleventh Amendment bar.").

None of these exceptions apply.  New York has not consented to be sued in federal court for alleged § 1983 violations, *see Mamot v. Bd. of Regents*, 367 Fed App'x 191, 192 (2d Cir. 2010), nor did Congress abrogate states' sovereign immunity by enacting § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).  Finally, although the *Ex parte Young* doctrine may permit actions seeking prospective relief against state officials to stop ongoing violation of federal law, plaintiff seeks to enjoin the actions of Queens County District Attorney Richard Brown and Deputy Bureau Chief Floyd Herring – individuals who were dismissed from this action by Order dated June 30, 2015.  *See Melrose v. N.Y. State Dep't of Health Office of Prof'l Med. Conduct,* No. 05-CV-8778, 2009 WL 211029, at *5 (S.D.N.Y. Jan. 26, 2009) ("[T]he Second Circuit still requires that state officers be named in order for the *Ex Parte Young* exception to apply.").  Moreover, as explained further below, plaintiff fails to adequately plead any violation of federal law, much less an ongoing violation of federal law as

required by the *Ex Parte Young* doctrine. *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (stating that the *Ex parte Young* doctrine may apply "provided that [the] complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective'") (quoting *Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002)).

Because none of the exceptions to sovereign immunity apply, plaintiff's claims against the State Defendants in their official capacities are barred by the Eleventh Amendment and must be dismissed.

## II. *Younger* Abstention

The State Defendants also argue that the court should refrain from granting plaintiff declaratory and injunctive relief pursuant to the *Younger* abstention doctrine. (Def. Mem. at 10.) In *Younger v. Harris,* 401 U.S. 37 (1971), "the Supreme Court held that a federal court . . . should not enjoin a criminal proceeding in a state court." *Liberty Mut. Ins. Co. v. Hurlbut,* 585 F.3d 639, 646 (2d Cir. 2009).

*Younger* abstention is appropriate when three elements are met: 1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has a state court avenue open for review of constitutional claims. *See Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001) (listing

requirements under *Younger*); *Philip Morris, Inc. v. Blumenthal*, 123 F.3d 103, 105 (2d Cir. 1997) (same).  However, a federal court may "nevertheless intervene in a state proceeding upon a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'"  *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198-202 (2d Cir. 2002) (quoting *Younger*, 401 U.S. at 54).  A party seeking to circumvent *Younger* abstention bears the burden of establishing the applicability of one of the exceptions.  *Id.* at 198.

Here, the criminal case against plaintiff is still pending, New York has an important state interest in enforcing its criminal laws, and plaintiff may raise his constitutional claims in the pending criminal proceedings.  Moreover, plaintiff fails to allege any extraordinary circumstance justifying federal intervention in the pending state court criminal prosecution.  Accordingly, to the extent that plaintiff seeks an injunction of, or a declaration regarding, his criminal prosecution in state court (Compl. at 70), those claims are dismissed pursuant to *Younger.*

## III. Section 1983 Claims Against the State Defendants in their Individual Capacities.

Pursuant to Rule 12(b)(6), the State Defendants move to dismiss plaintiff's § 1983 claims for failure to state a claim upon which relief may be granted.  In order to maintain a

§ 1983 action, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id.* Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).

### A.  First Amendment Claim

Plaintiff brings a claim for "Freedom of Speech/Seizure of Phone" in violation of the First Amendment, contending that defendants Barry and Lowe unlawfully deprived plaintiff of his rights to freedom of speech and expression. (Compl. at 50.)  This claim appears to allege that Barry and Lowe violated plaintiff's First Amendment rights by prohibiting plaintiff from recording video on his smartphone inside the Queens County Civil Court.  (*See* Compl. at 16 (stating that administrative rule prohibiting video recording in the courthouse "obviously violates [plaintiff's] First Amendment rights").)  The State Defendants argue that this claim should be

dismissed because plaintiff has no First Amendment right to record video inside the Queens Civil Court. (Def. Mem. at 12-13.)

To recover on a First Amendment claim under § 1983, a plaintiff "must demonstrate that his conduct is deserving of First Amendment protection and that the defendants' conduct of harassment was motivated by or substantially caused by his exercise of free speech." *Rattner v. Netburn*, 930 F.2d 204, 208 (2d Cir. 1991). Whether the First Amendment protects particular speech requires the court to consider "the nature of the forum in which the speaker's speech is restricted." *Huminski v. Corsones*, 396 F.3d 53, 89 (2d Cir. 2004).

Plaintiff's recording in the courthouse is not deserving of First Amendment protection. "The function of a courthouse and its courtrooms is principally to facilitate the smooth operation of a government's judicial functions," which is "likely to be incompatible with expressive activities inside a courthouse." *Id.* at 91. Consequently, "Supreme Court and Second Circuit precedent are clear that a courthouse is a non-public forum." *Washpon v. Parr*, 561 F. Supp. 2d 394, 408 (S.D.N.Y. 2008); *see also United States v. Grace*, 461 U.S. 171, 178 (1983) (holding that the Supreme Court building and its grounds other than public sidewalks are not public forums). Inside a non-public forum, "governmental restrictions on

expressive conduct or speech are constitutional so long as they are reasonable in light of the use to which the forum is dedicated and 'are not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Washpon*, 561 F. Supp. 2d at 408-09.  Reasonableness "must be assessed in light of the purpose of the forum and all the surrounding circumstances." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 809 (1985).

The Administrative Rules of the New York State Unified Court System state, in relevant part:

> Taking photographs, films or videotapes, or audiotaping, broadcasting or telecasting, in a courthouse including any courtroom, office or hallway thereof, at any time or on any occasion, whether or not the court is in session, is forbidden, unless permission of the Chief Administrator of the Courts or a designee of the Chief Administrator is first obtained.

22 N.Y.C.R.R. § 29.1(a).  This administrative rule is viewpoint neutral and reasonable in light of the function of a courthouse. Plaintiff does not allege that he requested or received permission to record video inside Queens Civil Court.  Indeed, plaintiff's phone was only confiscated after he refused to leave the court's fourth floor hallway and disregarded multiple orders to cease recording video on his smartphone.  *See Remy v. Beneri*, No. 09-cv-4444, 2011 WL 5546237, at *8 (E.D.N.Y. Nov. 9, 2011) (finding restrictions on plaintiff's expression reasonable "in

light of the fact that the Support Magistrate had adjourned the
hearing and that plaintiff failed to obey the order to leave the
courtroom"); *Washpon*, 561 F. Supp. 2d at 409 (dismissing First
Amendment claim where plaintiff refused officers' orders to
leave courthouse).  Because plaintiff had no First Amendment
right to record video inside the courthouse, his First Amendment
claims are dismissed.

### B.   Fourth Amendment Claim for "Seizure of Phone"

Plaintiff's cause of action for "Freedom of
Speech/Seizure of Phone" also alleges a violation of plaintiff's
Fourth Amendment right "to be free from seizure" against Deputy
Clerk Barry and Major Lowe.  (Compl. at 50.)  To the extent this
claim is based on Major Lowe's confiscation of plaintiff's
smartphone in the courthouse (Compl. at 88), plaintiff fails to
state a claim for relief because, based on the facts alleged,
the confiscation of plaintiff's phone was reasonable.
Plaintiff's unlawful seizure claim against Barry also must be
dismissed because there is no allegation that Barry seized
plaintiff's phone.

"The Fourth Amendment protects the 'right of the
people to be secure in their persons, houses, papers, and
effects, against unreasonable searches and seizures . . . ."
*Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.,* 363 F.3d
177, 181 (2d Cir. 2004) (citation omitted).  However, "the

Fourth Amendment bars only *unreasonable* searches and seizures." *Holland v. Pinkerton Sec.,* 68 F.Supp.2d 282, 284 (S.D.N.Y. 1999) (emphasis added). "A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *Dickerson v. Napolitano,* 604 F.3d 732, 750 (2d Cir. 2010) (citing *City of Indianapolis v. Edmond,* 531 U.S. 32, 37 (2000)).

Here, Lowe's seizure of plaintiff's phone was reasonable because there were grounds for individualized suspicion of wrongdoing. As alleged in the Complaint, multiple court officers notified plaintiff that recording video on his smartphone was prohibited inside the courthouse. (Compl. at 15-16). Nevertheless, plaintiff alleges that he "stood up" as his friend Ward was being arrested and "was about to start recording again" when Major Lowe confiscated plaintiff's phone. (*Id.* at 18.) Plaintiff's repeated violations of the administrative rule prohibiting recording in the courthouse plainly justified seizure of plaintiff's phone. *See, e.g.*, *Bensam v. Bharara*, No. 12-cv-5409, 2014 WL 1243790, at *3 (S.D.N.Y. Mar. 25, 2014) (finding court's seizure of plaintiff's phone reasonable in light of "the significant governmental interest in safeguarding the courthouse and the minimal intrusion its limited and reasonable security procedures have on an individual's privacy interest.") Plaintiff's claim is dismissed because he cannot

sustain a Fourth Amendment claim that Barry or Lowe unreasonably seized his smartphone.

## C. False Arrest and False Imprisonment Claims

Plaintiff alleges that "by arresting Plaintiff without probable cause," Officer Bennett and Major Lowe violated plaintiff's Fourth Amendment right "to be free from false arrest and false imprisonment." (Compl. at 28.) Because "false arrest and false imprisonment are essentially the same causes of action," *Dickerson v. Monroe Cty. Sheriff's Dep't*, 114 F. Supp. 2d 187, 191 (S.D.N.Y. 2000), the court's analysis here applies to both. *See Mitchell v. Home*, 377 F. Supp. 2d 361, 376 (S.D.N.Y. 2005) ("Because a cause of action for false arrest is essentially the same tort as false imprisonment, they will be discussed as one cause of action.") (citation omitted)).

To adequately plead a false arrest claim under § 1983 (as well as under New York state law), a plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (internal quotation marks and citation omitted).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false

arrest, whether that action is brought under [New York] law or under [Section] 1983." *Kilburn v. Vill. of Saranac Lake,* 413 F. App'x 362, 363 (2d Cir. 2011) (quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996) (internal citation and quotation marks omitted)). Probable cause to arrest exists "when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin,* 494 F.3d 344, 368 (2d Cir. 2007).

In evaluating the existence of probable cause, the court must look to the "totality of the circumstances," *Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002), and consider the "facts available to the officer at the time of arrest." *Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 128 (2d Cir. 1997) (internal citations omitted). Furthermore, the court's "assessment as to whether probable cause existed at the time of the arrest is to be made on the basis of the collective knowledge of the police, rather than on that of the arresting officer alone." *Husbands ex rel. Forde v. City of New York,* 335 F. App'x 124, 127 (2d Cir. 2009); *see Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir. 2000) (noting that in making a probable cause determination, police officers are "entitled to rely on the allegations of fellow police

officers"). When there are no material facts in dispute, the existence of probable cause may be determined as a matter of law. *See, e.g., Betts v. Shearman*, 751 F.3d 78, 82-83 (2d Cir. 2014) (upholding dismissal of false arrest claims based on existence of probable cause).

The State Defendants contend that the facts alleged in the Complaint establish there was probable cause to arrest plaintiff for disorderly conduct in violation of New York Penal Law §§ 240.20(2) and (6), and probable cause to arrest for obstruction of governmental administration in violation of New York Penal Law § 195.05. (Def Mem. at 15-17.) Under Second Circuit case law, a false arrest claim "turns on whether probable cause existed to arrest for any crime, not whether probable cause existed with respect to each individual charge." *Marcavage v. City of New York*, 689 F.3d 98, 109 (2d Cir. 2012). Thus, plaintiff's false arrest claim fails if probable cause supported any one of the three offenses for which he was ultimately charged.

Under § 240.20(2), "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . he makes unreasonable noise." The term "unreasonable noise" in this context means "a noise of a type or volume that a reasonable person, under the circumstances, would not tolerate."

*Provost v. City of Newburgh*, 262 F.3d 146, 158–59 (2d Cir. 2001)

(quoting *People v. Bakolas,* 449 N.E.2d 738, 740 (1983)). The

New York Court of Appeals has explained that "[t]he public

nature of the requisite intent or risk makes [§ 240.20(2)]

essentially a disturbing the peace ordinance." *Bakolas*, 449

N.E.2d at 740.

On June 10, 2015, plaintiff was convicted after a

bench trial of disorderly conduct in violation of § 240.20(2).

(*See* Guardiola Decl., Ex. B.) Ordinarily, a claim for damages

relating to a conviction that has not been invalidated is not

cognizable under § 1983, because "a judgment in favor of the

plaintiff would necessarily imply the invalidity of his

conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487

(1994). Plaintiff therefore must allege that his arrest and

detention have been reversed, expunged, or declared invalid in

order to bring a § 1983 claim for false arrest. *Id.* Plaintiff

does not allege he has succeeded in invalidating his conviction

for disorderly conduct. Consequently, the Complaint fails to

state a claim for false arrest or false imprisonment under §

1983 and the claims are dismissed.

Even if plaintiff's conviction were invalidated,[7]

plaintiff has not stated a claim for false arrest or false

---

[7] Plaintiff's appeal of his conviction for disorderly conduct remains pending.

imprisonment because his own allegations, accepted as true for purposes of considering the instant motion, establish that there was probable cause to arrest plaintiff for disorderly conduct in violation of § 240.20(2). On April 16, 2014, after Officer Bennett instructed plaintiff to stop recording video on his smartphone in the courthouse, plaintiff used a "voice of consternation" for several minutes in order to attract members of the general public as "witnesses" while he continued recording court officers. (Compl. at 16.) Although Officer Bennett's sworn statement characterizes plaintiff's noise as "screaming and yelling" rather than "a voice of consternation," (*id.* at 38) there is no dispute that plaintiff's verbal confrontation with the court officers was loud enough to attract "bystanders and onlookers" to the scene, as plaintiff alleges. (*Id.* at 17.) This is consistent with plaintiff's stated intent to make sufficient noise to attract the attention of the general public "to come over and be witnesses." (*Id.* at 16.) The verbal confrontation occurred immediately after multiple court officers instructed plaintiff to stop recording video and disperse from the court's fourth floor elevator bank. (*Id.* at 15-16.)

These alleged circumstances are sufficient to warrant the reasonable belief that plaintiff's verbal confrontation with the responding officers created "unreasonable noise" in a common

28

area of the courthouse with the intent to "inconvenience, annoy, or alarm" members of the general public.  Accordingly, because there was probable cause to arrest plaintiff for disorderly conduct in violation of § 240.20(2), plaintiff's § 1983 and state law causes of action for false arrest and false imprisonment are dismissed.[8]

### D.  Malicious Prosecution

Plaintiff brings Section 1983 and state law causes of action for malicious prosecution against Officer Bennett, Major Lowe, and Deputy Clerk Barry arising out of his prosecution for obstructing governmental administration pursuant to N.Y. Penal Law § 195.05 and two counts of disorderly conduct pursuant to N.Y. Penal Law §§ 240.20(2) and (6).  (Compl. at 53-55; 63-64.)[9]

---

[8] Officer Bennett and Major Lowe also are entitled to qualified immunity on plaintiff's false arrest and false imprisonment claims because there was probable cause for arrest.  *See Marcavage*, 689 F.3d at 110 n.7 ("Because we conclude there was probable cause for Plaintiffs' arrest, *a fortiori* he would be entitled to qualified immunity on this claim.").  An officer is entitled to qualified immunity if "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991).  The fact that plaintiff was found guilty at trial of violating § 240.20(2) further demonstrates that, at the very least, officers of reasonable competence could disagree on whether the probable cause existed.  *See Washpon*, 561 F. Supp. 2d at 404 (noting that a "magistrate [having] found [plaintiff] guilty [of disorderly conduct] shows at least that reasonably competent officers could reasonably have disagreed on the propriety of the arrest").

[9] In his sixth cause of action, plaintiff also alleges "deprivation of liberty."  (Compl. at 53.)  To the extent that plaintiff seeks to assert a substantive due process claim based on deprivation of liberty, the court construes this as duplicative of plaintiff's claim for malicious prosecution. *See Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (noting that Section 1983 liability for malicious prosecution "typically implicates constitutional

A malicious prosecution claim implicates the Fourth Amendment right "to be free of unreasonable seizure of the person." *Singer v. Fulton Cty. Sherriff*, 63 F.3d 110, 116 (2d Cir. 1995). To succeed on a claim of malicious prosecution, the plaintiff "must show some post-arraignment deprivation of liberty that rises to the level of a constitutional violation." *Id.* at 117. State law provides the elements of a § 1983 claim for malicious prosecution. Under New York law, plaintiff must show: "(1) defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice, and (4) the matter terminated in plaintiff's favor." *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (internal quotation marks, citation, and alterations omitted). As with claims of false arrest, probable cause is a complete defense to malicious prosecution claims. *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2003).

Plaintiff's federal and state malicious prosecution claims fail for two reasons. First, plaintiff does not allege the personal involvement of either Major Lowe or Deputy Clerk Barry in his alleged malicious prosecution. Second, with respect to Officer Bennett, the allegations in the Complaint

---

rights secured by the fourteen amendment, such as deprivation of liberty")
(quoting *Easton v. Sundram,* 947 F.2d 1011, 1017 (2d Cir. 1991)).

establish there was probable cause to prosecute plaintiff on each count in the superseding information.

### 1. Personal Involvement

The first element of a malicious prosecution claim requires defendant to have initiated a prosecution against plaintiff. In "malicious prosecution cases against police officers, plaintiffs have met this first element by showing that officers brought formal charges and had the person arraigned." *Llerando-Phipps v. City of New York,* 390 F. Supp. 2d 372, 382 (S.D.N.Y. 2005) (internal citations omitted); *see also Cameron v. City of New York,* 598 F.3d 50, 63 (2d Cir. 2010) ("Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments."); *Ricciuti*, 124 F.3d at 130 ("[A] jury could clearly find that [the defendant police officer] started the assault prosecution because no one disputes that he started the prosecution by filing the charges of second-degree assault."). By contrast, "a plaintiff usually cannot show arresting officers initiated a criminal proceeding against him solely based on an arrest," unless false information provided by the officer "influences a decision whether to prosecute." *Levy v. City of New York*, 935 F. Supp. 2d 575, 588–89 (E.D.N.Y. 2013) (internal quotation marks and citation omitted).

Here, Officer Bennett initiated plaintiff's prosecution by filing an accusatory instrument (i.e., her sworn statement) in support of the September 24, 2014 superseding information. (Compl. at 37-38.) However, the Complaint does not allege the specific, personal involvement of Major Lowe or Deputy Clerk Barry in plaintiff's prosecution. Instead, plaintiff makes the conclusory assertion the Lowe and Barry "conspired" with the Assistant District Attorney and others to "gain [sic] complaining witness Defendant Bennett into falsely accusing the Plaintiff." (Compl. at 53.) This allegation – which does not allege the particular actions Lowe and Barry took to conspire or maliciously prosecute plaintiff – is insufficient to state a plausible malicious prosecution cause of action. *See, e.g.*, *Barber v. Ruzzo*, No. 10-CV-1198, 2011 WL 4965343, at *2 (N.D.N.Y. Oct. 19, 2011) ("Simply stating that [defendants] were 'personally and actively involved in the continuation of criminal proceedings against [a plaintiff],' is grossly insufficient to establish personal involvement in the actual prosecution."). Accordingly, the state and federal malicious prosecution claims against Barry and Lowe are dismissed.

### 2. Probable Cause

Although Officer Bennett initiated the prosecution against plaintiff, the malicious prosecution claim against Bennett nonetheless fails because there was probable cause to

prosecute each charge in the superseding information. The court will separately review the merits of each charge in the superseding information for probable cause to prosecute. *See Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir. 1991) (the court must "separately analyze the charges claimed to have been maliciously prosecuted").

### i.    Disorderly Conduct – N.Y. Penal Law § 240.20(2)

The court has already found, as discussed *supra*, that Officer Bennett had probable cause to arrest plaintiff for disorderly conduct in violation of New York Penal Law § 240.20(2) for making unreasonable noise in the courthouse. "If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'" *Johnson v. Constantellis*, 221 Fed. App'x 48, 50 (2d Cir. 2007) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)). Plaintiff does not allege that the probable cause to arrest plaintiff was vitiated by an intervening fact or fraud. Accordingly, the court finds there was probable cause to prosecute plaintiff on this disorderly conduct charge.[10]

---

[10] Plaintiff also fails to meet the fourth element of a malicious prosecution claim, favorable termination of proceedings, due to his conviction for disorderly conduct in violation of N.Y. Penal Law § 240.20(2).

ii.  Disorderly Conduct – N.Y. Penal Law § 240.20(6)

Under § 240.20(6), "a person is guilty of disorderly
conduct when, with intent to cause public inconvenience,
annoyance or alarm, or recklessly creating a risk thereof . . .
[h]e congregates with other persons in a public place and
refuses to comply with a lawful order of the police to
disperse."  To establish probable cause to prosecute a violation
of N.Y. Penal Law § 240.20(6), it must be shown that plaintiff:
(1) congregated with other persons in a public place; (2) was
given a lawful order of the police to disperse; (3) refused to
comply with that order; and (4) acted "with intent to cause
public inconvenience, annoyance or alarm" or with recklessness
to the "risk thereof."  *United States v. Nelson*, No. 10-cr-
414, 2011 WL 1327332, at *3 (S.D.N.Y. Mar. 31, 2011), *aff'd*, 500
Fed. App'x 90 (2d Cir. 2012).  The State Defendants establish
all four elements.

First, plaintiff was congregating with other persons
in a public area of the courthouse.[11]  According to the New York
Court of Appeals, "[t]he term 'congregates with others', as used
in the statute, requires at the very least three persons
assembling at a given time and place."  *People v. Carcel*, 144

_____

[11] Although the Second Circuit has held that the interior of a courthouse is
not a public forum for First Amendment purposes, the court here distinguishes
between the areas of a courthouse open to the public as opposed to restricted
areas.

34

N.E.2d 81, 85 (N.Y. 1957). Plaintiff alleges that, before he was arrested, he and Ward stood together by the courthouse's fourth floor elevators with court officers. (Compl. at 15.) He further alleges that he and Ward refused to leave that location until plaintiff was "confident that there were enough bystanders and onlookers who observed what transpired." (*Id.* at 17.) This allegation suffices to show that plaintiff assembled in the courthouse with at least three persons. *See, e.g., Pesola v. City of New York*, No. 15-cv-1917, 2016 WL 1267797, at *5 (S.D.N.Y. Mar. 30, 2016) (finding that two plaintiffs "congregated with others" within the meaning of § 240.20(6) where "there was a large crowd assembling around the area where each plaintiff claims he was standing").

The second and third elements necessary to find probable cause are met because the arresting officers gave lawful dispersal orders that plaintiff disobeyed. Plaintiff alleges that he disregarded three orders to disperse from the area surrounding the court's fourth floor elevators. (Compl. at 15-17.) In the context of §240.20(6), an order to disperse is considered lawful "unless the order was 'purely arbitrary' and 'not calculated in any way to promote the public order.'" *Crenshaw v. City of Mount Vernon*, 372 Fed. App'x 202, 206 (2d Cir. 2010) (quoting *People v. Galpern*, 181 N.E. 2d 572 (N.Y. 1932)). Plaintiff's allegations are sufficient to warrant a

reasonable belief that the officers' dispersal orders were not arbitrary, but instead intended to promote order in a public area of the courthouse. Moreover, it is undisputed that officers ordered plaintiff to disperse while he was violating the Queens Civil Court's administrative rule prohibiting video recording. "A dispersal order reasonably calculated to enforce lawful [rules] is itself 'lawful' within the meaning of section 240.20(6)." *Caravalho v. City of New York*, No. 13-cv-4174, 2016 WL 1274575, at *6 (S.D.N.Y. Mar. 31, 2016).

Finally, as the court has already determined, the allegations in the Complaint support a reasonable belief on the part of the arresting officers that plaintiff acted "with intent to cause public inconvenience, annoyance or alarm." This finding is based on plaintiff's stated intent to disobey officers' dispersal order until "enough bystanders and onlookers" had gathered to observe his confrontation with court officers. (Compl. at 17.) Accordingly, the facts alleged in the Complaint establish as a matter of law that there was probable cause to prosecute plaintiff for disorderly conduct in violation of N.Y. Penal Law 240.20(6).

### iii. Obstructing Governmental Administration - § 195.05

Under N.Y. Penal Law § 195.05, a person obstructs governmental administration when "he intentionally obstructs, impairs or perverts the administration of law or other

36

governmental function or prevents or attempts to prevent a
public servant from performing an official function, by means of
intimidation, physical force or interference, or by means of any
independently unlawful act."  Findings of probable cause for
violating §195.05 may be based on, *inter alia*, "a defendant's
refusal to obey orders to leave a premises . . . or to keep away
from an area where a disturbance is taking place."  *Wilder v.
Vill. of Amityville*, 288 F. Supp. 2d 341, 344–45 (E.D.N.Y.
2003), *aff'd*, 111 F. App'x 635 (2d Cir. 2004).  However, "mere
words, without more" do not constitute obstruction of
governmental administration.  *Graham v. City of New York*, 128 F.
Supp. 3d 681, 695 (E.D.N.Y. 2015) (citing *Dowling v. City of New
York*, No. 11-cv-4954, 2013 WL 5502867, at *8 (E.D.N.Y. Sept. 30,
2013)); *Matter of Davan L.,* 689 N.E.2d 909 (N.Y. 1997)
("[P]urely verbal interference may not satisfy the 'physical'
component under Penal Law § 195.05.") (citations omitted).

        Probable cause to prosecute plaintiff for obstructing
governmental administration clearly existed.  As discussed
*supra*, plaintiff alleges that he disobeyed multiple orders from
court officers to disperse from the fourth floor of the
courthouse while recording with his smartphone.  This was
sufficient to warrant the reasonable belief that plaintiff
intentionally impaired the administration of law.  Additionally,
as the State Defendants argue, by committing disorderly conduct

in violation of § 240.20(2) – an "independently unlawful act" – plaintiff prevented Officer Bennett and other officers from enforcing the prohibition on cell phone use inside the Queens Civil Court.  (Def. Mem. at 17.)  Thereafter, plaintiff directly interfered with Ward's arrest by attempting to record the arrest on his smartphone after officers had repeatedly informed plaintiff that such recordings inside the courthouse were prohibited.  (Compl. at 18.)  These facts establish as a matter of law that there was probable cause to prosecute plaintiff for obstructing governmental administration in violation of § 195.05.  Therefore, plaintiff's state and federal claims against Officer Bennett for malicious prosecution are dismissed.[12]

### E.    Abuse of Process

Plaintiff alleges abuse of process against Deputy Clerk Barry, Major Lowe, and Officer Bennett.  (Compl. at 53.) "The torts of malicious prosecution and abuse of process are closely allied."  *Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir. 1994)).  "While malicious prosecution concerns the improper issuance of process, the gist of abuse of process is the improper use of process after it is regularly issued."  *Id.* at 80 (internal quotation marks and citation omitted).  As with

---

[12] As with the false arrest claim, Officer Bennett is entitled to qualified immunity on plaintiff's malicious prosecution causes of action because there was probable cause for arrest.  *See Marcavage*, 689 F.3d at 110 n.7.

plaintiff's false arrest and malicious prosecution claims, the court looks to New York law for the elements of this Section 1983 claim.

Under New York law, an abuse of process claim "lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York,* 331 F.3d 63, 69–70 (2d Cir. 2003) (internal quotation marks omitted); *accord Hoffman v. Town of Southampton,* 523 F. App'x 770, 771 (2d Cir. 2013).

"The crux of a malicious abuse of process claim is the collateral objective element." *Douglas v. City of New York*, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009). To satisfy this element, "a plaintiff must prove not that defendant acted with an improper motive, but rather an improper purpose — that is, he must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.* (internal quotation marks and citation omitted; parenthetical in original). For example, "fabricating assault charges to save one's job could be abuse of process because safeguarding one's own employment lies outside the legitimate goal of criminal process." *Id.* (internal quotation marks and citation omitted).

As an initial matter, this claim fails against Barry and Lowe because plaintiff does not allege that either defendant had any role in prosecuting plaintiff; these defendants therefore did not "employ legal process" against plaintiff – the first required element of an abuse of process claim. *Cf. Cook*, 41 F.3d at 80 (noting "the [state] Troopers clearly employed criminal process against [plaintiff] by having him arraigned on charges"). With respect to Officer Bennett, the Complaint is devoid of any allegation suggesting that her role in the prosecution was motivated by a collateral objective. Stated differently, there is no basis to find that Officer Bennett arrested and prosecuted plaintiff for some improper purpose lying outside of the legitimate goal of criminal process. Officer Bennett's sworn affidavit was "employed for the very purpose of [its] filing," i.e., to support plaintiff's arrest and prosecution for disorderly conduct and obstructing governmental administration. *Silver v. Kuehbeck*, 217 Fed App'x 18, 21 (2d Cir. 2007); *Brandon v. City of New York*, 705 F. Supp. 2d 261, 275 (S.D.N.Y. 2010) ("If [defendant] uses the process of the court for its proper purpose . . . there is no abuse of process."). Consequently, plaintiff's § 1983 and state law causes of action for abuse of process are dismissed.

**F.   Failure to Intervene**

Plaintiff also brings claims for failure to intervene against defendants Barry, O'Brien, and the John Doe Officers. (Compl. at 48, 51.)  Plaintiff's failure to intervene claims fail in the absence of an adequately pled underlying constitutional violation.  *See Taveres v. City of New York*, No. 08-cv-3782, 2010 WL 234974, at *4 (S.D.N.Y. Jan. 19, 2010) (recognizing that failure to intervene claim requires, *inter alia*, that officers failed to intervene to prevent another officer's constitutional violation); *see also Ladoucier v. City of New York*, No. 10-CV-5089, 2011 WL 2206735, at *4 (S.D.N.Y. June 6, 2011) (same). Accordingly, the failure to intervene claims are dismissed.

**G.   State Law Claims**

A district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it had original jurisdiction.  28 U.S.C. § 1367(c)(3); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003); *see also Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 130 (2d Cir. 2003) ("In most circumstances, a district court should decline supplemental jurisdiction if all federal claims have been dismissed at the pleading stage.").  Because the court has dismissed all of plaintiff's federal causes of action, the court declines to exercise supplemental jurisdiction over any of

plaintiff's remaining state law claims.  Accordingly, any
plaintiff's remaining state law claims are dismissed.

### Leave to Amend

Leave to amend a complaint "shall be freely given when
justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Second
Circuit has cautioned that a *pro se* plaintiff should be provided
the opportunity to "amend his complaint prior to its dismissal
for failure to state a claim, unless the court can rule out any
possibility, however unlikely it might be, that an amended
complaint would succeed in stating a claim."  *Gomez v. USAA Fed.
Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).  This court
already provided plaintiff an opportunity to amend his complaint
(*see* Minute Entry dated 9/16/2015), but plaintiff failed to do
so.  (ECF No. 19, Letter dated 10/19/2015.)  Nor did plaintiff
oppose the State Defendants' motion to dismiss.  Additionally,
any amended complaint would be futile because, as explained
herein, plaintiff's claims fail as a matter of law.  Leave to
replead therefore is denied and, with the exception of
plaintiff's remaining state law claims, the Complaint is
dismissed with prejudice.

## Conclusion

For the foregoing reasons, the State Defendants' motion to dismiss is granted.  Because the court dismisses all federal claims in this action with prejudice, the court declines to exercise supplemental jurisdiction over any remaining state law claims.  The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to plaintiff, note service on the docket, and close this case.

**SO ORDERED.**

Dated:    September 20, 2016
          Brooklyn, New York

                                    _____/s/_____
                                    Kiyo A. Matsumoto
                                    United States District Judge